**In re IQ TELECOMMUNICATIONS, INC., Debtor.**

**CENTRAL ILLINOIS SAVINGS & LOAN ASSOCIATION, a federal savings association, Plaintiff,**

**v.**

**RITTENBERG COMPANY, LTD., et al., Defendants.**

Bankruptcy No. 83 B 15617.
Adv. No. 85 A 201.
No. 86 C 1209.

United States District Court, N.D. Illinois, E.D.

Feb. 6, 1987.

James D. Skaar, Ruddy, Myler, Ruddy & Fabian, Aurora, Ill., for Charles J. Myler, Trustee in Bankruptcy.

Benjamin P. Hyink, Keevan D. Morgan, Lawrence M. Liebman, John A. Friedman, Drugas, Morgan & Hyink, Chicago, Ill., for Central Illinois Savings.

Sheldon Karon, Debra Riggs-Bonamici, Kathleen M. Dedmon, Karon, Morrison & Savikas, Ltd., Chicago, Ill., for David F. Peskind.

George B. Collins, Christopher Bargione, Collins & Uscian, Geoffrey A. Bryce, Rooks, Pitts & Poust, Chicago, Ill., for Rittenberg defendants.

Keevan D. Morgan, Benjamin P. Hyink, Lawrence M. Liebman, Drugas, Morgan & Hyink, Chicago, Ill., Leonard J. Wojtecki, William J. Truemper, Donald E. Mills, Truemper, Ward, Hollingsworth & Wojtecki, Aurora, Ill., Constantine N. Dranias, Chicago, Ill., for plaintiff.

Chester H. Foster, Arnstein, Gluck, Lehr Barron & Milligan, George B. Collins, Collins & Uscian, Christopher Bargione, Kenneth E. North, Solomon, Rosenfeld, Elliott & Stiefel, Joseph J. Ticktin, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Central Illinois Savings & Loan Association ("Central") is a major creditor of IQ Telecommunications, Inc. ("IQ"), the debtor in this bankruptcy case. Central Illinois filed an adversary complaint on behalf of the estate seeking to recover property conveyed by IQ to other entities shortly before and after IQ filed its Chapter 11 petition. The complaint names some 25 individuals and entities as defendants, and it consists of 106 pages and 220 exhibits contained in nine volumes. Defendants Rittenberg Company, Ltd. ("Rittenberg"), Robert

Arundale II, Linda Battle, Carolyn DePhillips, James L. Popp, Linda Reedy, Rhymney Company, Ltd., Drafting and Construction Services, Inc., Huntington Chase Development Company, Inc., Chase Development Company, Inc. and Investment Builders International, Inc. (collectively, the "Rittenberg defendants"), now move to withdraw reference of Central's adversary complaint from the bankruptcy court pursuant to 28 U.S.C. § 157(d). Defendant David Peskind also moves to withdraw the reference. For the following reasons, the Rittenberg defendants' motion is denied and Peskind's motion is granted.

### FACTS

IQ filed for reorganization under Chapter 11 of the United States Bankruptcy Code on December 16, 1983. On March 12, 1984, the proceedings on IQ's petition were converted to Chapter 7. Central filed its first adversary complaint on February 20, 1985 and was granted leave to pursue the action soon afterwards.

Essentially the original complaint alleged that IQ's principals and others engaged in a variety of activities designed to loot the bankrupt estate of IQ and to prevent IQ from paying its creditors. Among others, the original complaint named as defendants most of the Rittenberg defendants, including Arundale, Battle, DePhillips, Popp and Reedy (the "individual defendants"). The individual defendants apparently were directors and/or officers of IQ and other related business entities. The original complaint consisted of three counts, and among other things sought relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*

The individual defendants then successfully moved for an extension of time to answer the complaint. On July 15, 1985, they filed a motion to dismiss the complaint. The bankruptcy judge denied that motion on August 23, 1985 and granted Central leave to amend its complaint. On September 23, 1985, Central filed an amended complaint adding more defend-

ants, realleging its RICO claim and adding six more counts. The Rittenberg defendants sought and received another extension of time in which to answer the complaint and again moved to dismiss several counts, including the RICO claim. The Rittenberg defendants also moved to strike certain discovery requests.

On November 27, 1985, IQ's trustee in bankruptcy filed a crossclaim against the Rittenberg defendants and others (but not Peskind). The crossclaim is very similar to Central's complaint and also includes a RICO claim. The bankruptcy judge granted Central leave to file a second amended complaint on the same day. Central filed that complaint on December 4, 1985. It named David Peskind as a defendant for the first time and contained further expanded factual allegations. Peskind is an attorney who had previously represented IQ and Irwin Essenfeld, one of the other defendants in this action. Peskind is included only in the RICO count and the allegations against him stem from his representation of IQ and Essenfeld.

On February 12, 1986, after more extensions of time, the Rittenberg defendants filed a motion to strike the second amended complaint. The Rittenberg defendants filed their motion to withdraw the reference in this court on March 13, 1986. Peskind also sought and received an extension of time in which to respond to the second amended complaint. He filed his motion to withdraw reference in this court on February 20, 1986. Peskind later filed a motion to dismiss the second amended complaint in the bankruptcy court.

Since Central first filed its adversary complaint, the bankruptcy judge has held many hearings in this case, including hearings on preliminary injunctive relief. Substantial discovery has taken place, some of it contested. The bankruptcy judge issued rulings on several important issues in this case before the motions to withdraw reference were filed, including one in which he held that Rittenberg was the alter ego of IQ.

## DISCUSSION

Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the Act") in response to the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which limited the power of Congress to assign adjudicative authority to federal bankruptcy judges.[1] The Act allows federal courts to refer bankruptcy cases to the bankruptcy judges for the district automatically. See 28 U.S.C. §§ 157(a), 1334.[2] The Act also provides for the reference to be withdrawn in certain situations:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of a party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). Peskind and the Rittenberg defendants argue that Central's adversary proceeding must be withdrawn under the second sentence of § 157(d).

■ Withdrawal of reference is mandatory under § 157(d) only if resolution of an adversary proceeding "would require consideration of both Title 11 and other laws of the United States affecting interstate commerce." Peskind and the Rittenberg defendants argue that mandatory withdrawal provisions apply because of Central's RICO claim. The court agrees.

Section 157(d) is to be construed narrowly. Withdrawal is not mandatory unless the resolution of a proceeding requires substantial and material consideration of both Title 11 and the other federal statutes. *See, e.g., In re Anthony Tammaro, Inc.*, 56 B.R. 999, 1003–07 (D.N.J.1986); 1 *Collier on Bankruptcy*, ¶ 3.01[2][e], at 3–55 (L. King ed. 1986). Nevertheless, Central's second amended complaint easily meets that standard. Count 2 of the complaint consists of 76 pages and alleges that 29 individuals and entities violated RICO by engaging in a pattern of mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and 139 specific instances of bankruptcy fraud, 18 U.S.C. § 152.[3] Count 2 is the only count that names Peskind as a defendant and it comprises a substantial part of the allegations against the Rittenberg defendants. Central and IQ's trustee concede that the resolution of the adversary proceeding will require consideration of RICO, but they argue that the adversary proceeding is fundamentally a suit to recover fraudulent conveyances that is best litigated in the bankruptcy court. While that may be true, the fact remains that the adversary proceeding cannot be resolved by merely incidental reference to non-code federal laws. *See, e.g., In re Mandalay Shores Cooperative Housing Ass'n Inc.*, 58 B.R. 586, 587 (N.D.Ill.1986); *In re White Motor Corp.*, 42 B.R. 693, 704–06 (N.D. Ohio 1984). Nor can it be resolved by merely incidental reference to Title 11. *See, e.g., In re Maislin Industries, U.S., Inc.*, 50 B.R. 943, 948 (Bankr.E.D.Mich. 1985) ("the mere fact that the case is in bankruptcy court does not mean that con-

1. There was no majority opinion in the *Northern Pipeline* case. However, at a minimum, *Northern Pipeline* holds that Congress may not delegate to Article I bankruptcy courts the power to adjudicate, render final judgments, and issue binding orders in a traditional contract action arising under state law, and subject only to ordinary appellate review, without consent of the litigants. *See Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 584, 105 S.Ct. 3325, 3334–35, 87 L.Ed.2d 409 (1985).

2. Like most district courts, the Northern District of Illinois automatically refers bankruptcy cases to the bankruptcy judges for the District. *See* General Order of July 10, 1984 (N.D.Ill.)

3. The mail fraud statute, the wire fraud statute, and RICO are all "laws of the United States regulating organizations or activities affecting interstate commerce." *See, e.g., In re Richard Berke*, No. 86 C 787, slip op. at 6 n. 5 (N.D.Ill. Sept. 18, 1986) [Available on WESTLAW, FBKR–CS database]; *In re Hartley*, 55 B.R. 781, 784 (Bankr.N.D.Ohio 1985).

sideration of any Bankruptcy Code issue is necessary to the resolution of the case"). Much of Central's complaint, including many of the allegations in Count 2, require substantial and material consideration of 11 U.S.C. § 548 (fraudulent transfers and obligations), and other aspects of Title 11 also are implicated. The trustee's cross-claim requires consideration of substantially the same issues. Because resolution of this adversary proceeding will require substantial and material consideration of both Title 11 and the other federal laws involved, the mandatory withdrawal provisions apply. *See In re Ottawa Cartage, Inc.*, 55 B.R. 371, 374 (N.D.Ill.1985); *In re Continental Airlines Corp.*, 50 B.R. 342, 360 (S.D.Tex.1985), *aff'd*, 790 F.2d 35 (5th Cir.1986).

■ However, § 157(d) also requires motions to withdraw a bankruptcy reference to be timely. The statute itself offers no guidance in determining when a motion is timely, but several courts have reached the issue. In *In re Giorgio*, 50 B.R. 327, 328–29 (D.R.I.1985), the court held that a motion to withdraw an adversary proceeding made nearly a year after the adversary complaint was filed was untimely, stating that

> [t]he fair intendment of the statute … is to ensure that the request for withdrawal be filed as soon as practicable after it has become clear that "other laws" of the genre described in 28 U.S.C. § 157(d) are implicated, so as to protect the court and the parties in interest from useless costs and disarrangement of the calendar, and to prevent unnecessary delay and the use of stalling tactics. Once it becomes apparent that such an issue is in the case, a party has a plain duty to act diligently—or else to forever hold his peace.

Similarly, in *In re Baldwin-United Corp.*, 57 B.R. 751, 754 (S.D.Ohio 1985), the court stated that a motion to withdraw reference would be timely "if it was made as promptly as possible in light of the developments in the bankruptcy proceeding" and held that the motion before it did not meet that

standard. *See also In re Baldwin-United Corp.*, 43 B.R. 888, 894–95 & n. 7 (Bankr.S. D.Ohio 1984) (17 day delay untimely under the circumstances).

■ We agree that a motion under § 157(d) should be made as soon as possible after the moving party has notice of the grounds for withdrawing the reference. In this case, it was apparent from Central's original complaint that the grounds for withdrawing the reference now advanced by the Rittenberg defendants existed. That complaint, including Central's RICO claim, was filed on February 20, 1985 and the Rittenberg defendants have been actively defending the adversary proceeding since they unsuccessfully moved to dismiss the original complaint in July 1985. Even after Central filed its second amended complaint, the Rittenberg defendants attacked that complaint in the bankruptcy court before finally filing their motion to withdraw reference here on March 13, 1986. Nothing prevented them from filing their motion to withdraw reference sooner. The motion is therefore denied as untimely.

The Rittenberg defendants ostensibly base their motion on the trustee's cross-claim, which was not filed until November 27, 1985. However, the crossclaim added no new grounds for withdrawing the reference. It is very similar to Central's adversary complaint, both legally and factually. It seeks much of the same relief, and like Central's complaint it was filed on behalf of the debtor's estate. Under these circumstances, it is inappropriate to evaluate the timeliness of the Rittenberg defendants' motion to withdraw reference based solely on the trustees' crossclaim. Moreover even if it were appropriate to evaluate the timeliness issue on that basis, the Rittenberg defendants filed their answers to the crossclaim in the bankruptcy court before they filed their motion to withdraw reference here. In this case, the trustee's crossclaim does not change our conclusion that the Rittenberg defendants' motion is untimely.

■ In contrast, Peskind was not named as a defendant until Central filed its second

amended complaint. Although Peskind twice moved for an extension of time in which to respond to that complaint, those motions were uncontested. Peskind filed his motion to withdraw reference on February 20, 1986, within the time allowed by those extensions and before filing his motion to dismiss or any other motions or pleadings with the bankruptcy court. His motion is therefore timely and must be granted.

We are aware that granting Peskind's motion and denying the Rittenberg defendants' motion will require Central to litigate the adversary proceeding in two different courts if they intend to pursue Peskind. Although § 157(d) only requires withdrawal of Central's claim against Peskind,[4] fragmenting a proceeding by withdrawing one of many defendants is normally undesirable. In many cases it would be more appropriate for this court to exercise its discretion and withdraw the entire proceeding on its own motion under the first sentence of § 157(d).

However, this is not such a case. First, accepting Central's allegations as true, Peskind's role in the fraudulent schemes described in the complaint appears to be a limited one. The allegations against Peskind appear only in portions of Central's RICO count. Peskind is not named as a defendant in Central's other counts nor in the trustee's crossclaim. We do not intend to minimize the seriousness of Central's allegations against Peskind. According to Central's complaint, he filed sham lawsuits, incorporated shell corporations to defraud IQ's creditors, participated in several allegedly fraudulent transac-

tions, and gave false testimony in his deposition in this case. Nor do we express any opinion on the merits of his motion to dismiss. We note only that the allegations against him appear to relate to his role as an attorney for some of the principals in the alleged fraudulent schemes, rather than as a principal himself. To withdraw the entire proceeding based on the allegations against him would result in the tail wagging the dog.

Second, Congress did not intend § 157(d) to be "an escape hatch through which most bankruptcy matters will be removed to a district court." *See* 130 Cong.Rec. H1849–50 (daily ed. March 21, 1984) (remarks of Reps. Kramer and Kastenmeier). The parties have been actively litigating this case in the bankruptcy court for too long to allow the entire proceeding to be withdrawn based on the late addition of one defendant. Withdrawing the proceedings to this court now would only delay the resolution of this complicated case.

## CONCLUSION

Peskind's motion to withdraw the reference of the adversary proceeding is granted as to him only. The Rittenberg defendants' motion to withdraw the reference is denied.

---

**4.** For the purposes of § 157(d), a "case" comprises the entire Chapter 7, 9, 11 or 13 case that is commenced by the filing of a petition. Disputes which arise during the pendency of a case are "proceedings." *See Burger King Corp. v. B–K of Kansas, Inc.,* 64 B.R. 728, 731–32 (D.Kan. 1986); *In re Anthony Tammaro,* 56 B.R. at 1001 n. 2. Here, Case No. 85 A 201 constitutes a "proceeding" of which Central's claims against Peskind are a part. Although the issue apparently is one of first impression, fairly read, the "in whole or in part" language of § 157(d) applies to both mandatory and discretionary with-

drawal of reference. *See also* S.Rep. No. 55, 98th Cong., 1st Sess. 16 (1983) ("the district court thus retains [under the section corresponding to § 157(d) ] full power to withdraw or limit the reference of a bankruptcy case or proceeding to the bankruptcy court ..., and is further *required* to withdraw any *Marathon issue* if requested to do so.") (emphasis supplied). Such a reading also comports with the Congressional intent that § 157(d) be construed narrowly. *See* 130 Cong.Rec. H1850 (daily ed. March 21, 1984) (remarks of Rep. Kastenmeier).