**In re Emil and Judith STAVRIOTIS, Debtors.**

**No. 89 C 5838.**

United States District Court, N.D. Illinois, E.D.

Jan. 24, 1990.

---

See also, Bkrtcy., 103 B.R. 1005.

Stanley J. Parzen, Scott G. Golinkin, Chicago, Ill., for debtors.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Wilkes Barre Associates has petitioned this court to remove a portion of the captioned proceedings from the Bankruptcy Court. This "motion to withdraw reference" is made pursuant to 28 U.S.C. § 157(d). Because § 157(d) requires that the motion be timely, and this motion is not, it is denied.

1. These facts are compiled from the briefs filed by the parties in relation to this motion. Where

## FACTS [1]

Emil Stavriotis was a general partner in Wilkes Barre Associates, a limited partnership ("Wilkes Barre"). Wilkes Barre's sole purpose was to own a 98% limited partnership interest in another partnership, Wilkeswood Associates ("Wilkeswood"). Wilkeswood acquired and managed apartment complexes. In late 1981 and throughout 1982, Stavriotis and others sold limited partnership interests in Wilkes Barre, in part by making representations about the favorable tax consequences of the investment.

The investment, however, was not what it seemed, and the Internal Revenue Service ("IRS") soon began an investigation of the partnership's transactions. That investigation ultimately led the IRS to substantially reduce the deductions available on the Wilkes Barre investments.

On October 8, 1985, Stavriotis filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. The Wilkes Barre partnership agreement permitted the limited partners to continue the partnership in the event of the general partner's bankruptcy. The limited partners exercised this option and elected a successor general partner.

On October 20, 1986, Wilkes Barre filed proofs of claim in the Bankruptcy Court on behalf of itself and its limited partners. These claims were filed not only to protect the rights of the partnership and the limited partners while the IRS decision was being appealed, but also because of the possibility of further adverse IRS determinations affecting Wilkes Barre. At that time, the Wilkes Barre limited partners did not believe that any money would be available in the bankruptcy estate to satisfy their claims or those of the partnership.

In late 1988, Wilkes Barre came into possession of documents which indicated that Stavriotis (and others) had failed to disclose material facts while soliciting investors. Shortly afterward, Wilkes Barre and the limited partners filed suit in the U.S. District Court against Stavriotis and

the parties disagree as to the facts stated by the court, the disagreement is noted.

the others who had participated in the solicitation. The suit alleged that the defendants had violated various sections of the 1933 Securities Act, the 1934 Securities and Exchange Act, and the Racketeer Influenced and Corrupt Organizations Act.

Wilkes Barre (at the Bankruptcy Court's direction) filed its Claimant's Statement on November 22, 1988, about the same time it filed the district court suit. Stavriotis filed his response to the statement about three months later. Prior to that time, there had been no substantial pretrial conferences nor had any discovery begun with respect to Wilkes Barre's claims in the bankruptcy action.

Throughout this time, Wilkes Barre assumed that the sale of certain property was imminent, and that the proceeds of the sale were to provide the only funds available to satisfy claims. However, by April, Wilkes Barre came to believe that its limited partners would receive little or no benefit from the sale, and that the sale would actually cause them further loss.

Consequently, in May, 1989 Wilkes Barre filed a motion in the bankruptcy court asking that court to modify the automatic stay imposed by § 362 of the Bankruptcy Code (11 U.S.C. § 362) so that it could pursue its claims against Stavriotis in the District Court as part of the *Pucci* litigation. The bankruptcy judge denied this motion, recommending instead that Wilkes Barre pursue a motion to withdraw the reference in the District Court. Wilkes Barre filed the present motion in this court at the end of August, 1989.

## DISCUSSION

### I. History and Purpose of Motions to Withdraw Reference

Congress' power to assign adjudicative authority to non-Article III judges (such as bankruptcy judges) is limited. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Original jurisdiction over cases arising under Chapter 11 of the Bankruptcy Code, therefore, is in the federal district courts. *See* 28 U.S.C. § 1334(b).

Although bankruptcy cases are automatically referred to the Bankruptcy court, 28 U.S.C. § 157(a), the District Court may withdraw its reference of a particular case if the matter in question involves federal law that should or must be adjudicated by an Article III court. Specifically, 28 U.S.C. § 157(d) provides:

> The district court may withdraw ... any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

It is within the district court's discretion to remove a case from the bankruptcy court if a timely motion demonstrates "cause" for withdrawal. The district court must withdraw a case if, again upon a timely motion, it finds that the case cannot be resolved without consideration of federal laws other than the bankruptcy code, having a significant effect on interstate commerce.

The court should not construe § 157(d), however, as providing for withdrawal in a wide variety of cases. The legislative history is clear, and the courts have consistently held that Congress intended that "expert bankruptcy judges [would] determine complex [Bankruptcy] Code matters to the greatest extent possible." *In re White Motor Corp.*, 42 B.R. 693, 704 (N.D. Ohio 1984). Withdrawal is therefore appropriate only in a limited number of cases. *Id.*, see also *In re One Eighty Investments, Ltd.*, 72 B.R. 35 (N.D. Ill.1987) (presumption that Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court); *Sibarium v. NCNB Texas National Bank*, 107 B.R. 108; (N.D.Tex.1989); *In re Combustion Equip. Assocs.*, 67 B.R. 709, 711 (S.D. N.Y.1986); *Blackman v. Seton*, 55 B.R. 437 (D.D.C.1985).

### II. Timeliness

This case falls within the mandatory withdrawal provision of § 157. The por-

tion of the proceedings which Wilkes Barre has moved to withdraw involves both RICO and Securities law claims. These laws were stated by one of the principal congressional sponsors of the provision to be exactly the type which would require mandatory withdrawal. 130 Cong.Rec. H1850 (remarks of Senator Kastenmeier).

■ On the other hand, the fact that this case qualifies for mandatory withdrawal does not end this court's inquiry, for even the mandatory withdrawal provision of § 157 has a threshold requirement of timeliness. *In re Securities Group 1980,* 89 B.R. 192, 194 (M.D.Fla.1988). (Motions for either mandatory or permissive withdrawal must, as a threshold requirement, be timely.) *Accord, Burger King Corporation v. B–K of Kansas, Inc.,* 64 B.R. 728, 730 (D.Kan.1986). Unfortunately, there is no definition of the word "timely" in the statute.

### A. Legislative History

Since § 157 does not define "timely" (nor, indeed, does the entire Bankruptcy Amendments and Federal Judgeship Act ("BAFJA")) this court turns to the legislative history of the provision. Senator DeConcini (a sponsor of the bill) stated that § 157 was "intended to avoid unnecessary delays and costs" and that "the withdrawal provisions should not be allowed to be used by any party for purposes of delay." 130 Cong.Rec. S7621 (daily ed. June 19, 1984). Another pertinent consideration for district courts considering withdrawal motions suggested by the Senator was the status of the proceedings in the Bankruptcy court. *Id.*[2]

### B. Judicial Interpretations

Various courts have addressed the meaning of the term "timely". Judge Moran held that "a motion under § 157(d) should be made as soon as possible after the moving party has notice of the grounds for withdrawing the reference." *In re IQ*

*Telecommunications, Inc.,* 70 B.R. 742 (N.D.Ill.1987). Judge Rovner agreed in *In re Marina City Associates,* No. 89 C 3453, 1989 U.S. Dist. LEXIS 7025 (N.D.Ill. June 7, 1989). See also, *In re Baldwin–United Corp.,* 57 B.R. 751, 753 (S.D. Ohio 1985) (motion is timely if made at "the first reasonable opportunity", and motion made a year after statement of claim filed not timely).

Similarly, in *In re Giorgio,* 50 B.R. 327 (D.R.I.1985) the court held that a motion to withdraw the reference made nearly a year after an adversary complaint was filed in the district court was untimely. The court held that it had been evident from the time the adversary complaint had been filed that its resolution would involve considerations of other federal laws regulating interstate commerce. The interim of a year between filing of the suit and the motion to withdraw made the motion untimely. *Id.,* at 328–29. The court stated that:

> The fair intendment of the statute ... is to ensure that the request for withdrawal be filed as soon as practicable after it has become clear that 'other laws' of the genre described in 28 U.S.C. § 157(d) are implicated, so as to protect the court and parties in interest from useless costs and disarrangement of the calendar, and to prevent unnecessary delay and the use of stalling tactics. Once it becomes apparent that such an issue is in the case, a party has a plain duty to act diligently— or else forever hold his peace. *Id.*

The court went on to hold that the movants had not taken the first reasonable opportunity or even a "close temporal" one. Instead, they "fiddled whilst the Bankruptcy Court fires burned." *Id.* at 329.

### C. The Timeliness of the Instant Motion

■ Wilkes Barre argues that its motion is timely because it did not participate in an unreasonable delay and, in any case, withdrawal will not prejudice either the debtor

---

**2.** While it does not appear that this motion is filed for purposes of delay, Senator DeConcini's second concern is directed to just such a case as this. The case has been pending in bankruptcy court since 1985. Various claims have been settled since that time, and a motion for the sale of the main asset of the Estate was pending at the time the motion for withdrawal was filed. There is little question that withdrawal would delay the administration of the Estate.

**158**

or the administration of the estate. More specifically, Wilkes Barre asserts that its motion is timely because the facts giving rise to the RICO and securities fraud claims asserted against Stavriotis and the others involved in the Wilkes Barre offering were not made known to Wilkes Barre until late 1988. Wilkes Barre maintains that neither Stavriotis nor the bankruptcy estate will be prejudiced by withdrawal since no discovery had been conducted pertaining to Wilkes Barre's claims in the bankruptcy court, nor had a pretrial conference or trial date been set, as of the date of its motion.

Stavriotis, on the other hand, claims that Wilkes Barre's motion to withdraw the reference is untimely because it was not filed as soon as practicable after it became clear to Wilkes Barre that grounds existed for such a withdrawal, that is, at the end of 1988 when Wilkes Barre discovered the documents which led to the filing of the *Pucci* litigation.

It is clear from the briefs that the motion to withdraw the reference was not made as soon as possible after Wilkes Barre learned that federal laws might be implicated in the action before the bankruptcy court (late 1988) but rather when it learned that it might have something to gain from withdrawal (May, 1989). That the motion was filed as soon as Wilkes Barre realized withdrawal might be to its advantage is not sufficient to make the motion for withdrawal of the reference "timely".

Wilkes Barre and its limited partners admit that they came into possession of the documents which formed the basis of their district court suit against Stavriotis and others in "late" 1988. After obtaining the documents, Wilkes Barre "promptly" filed the *Pucci* securities fraud complaint. It filed a claimant's statement with the bankruptcy court on November 22, 1988. Wilkes Barre was certainly aware by that date that, in the words of § 157(d), "resolution of the proceeding require[d] consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce", namely, the federal securities laws and the

RICO statute. The timeliness of Wilkes Barre's motion to withdraw the reference should be measured from that date.

This court holds that Wilkes Barre's motion is not timely. It was not filed "as soon as possible" after the grounds for withdrawal became clear. Since even the mandatory withdrawal provision of § 157 requires a timely motion, this court denies the motion to withdraw the reference.

### CONCLUSION

Wilkes Barre's motion to withdraw the reference of certain proceedings in Bankruptcy case number 85 B 13499 from the Bankruptcy court is denied.