In re: **CONTEMPORARY LITHOGRAPHERS, INC., Debtor.**

**CONTEMPORARY LITHOGRAPHERS, INC., Marshall M. Boon, Edith N. Boon, Daniel Laughhunn and Amy Laughhunn, Marjorie Boyd Boon, Dean Marion, James E. Marion and Effie A. Marion, Plaintiffs,**

v.

**Carl W. HIBBERT, Louis Kelly, and Foye Lee K. Beck, as personal representatives of the Estate of Angus Wilton Kelly, Deceased, Defendants.**

**The ESTATE OF A. Wilton KELLY, By and Through Louis T. KELLY, Foye Lee K. Beck, and Carl W. Hibbert, Co-Executors, Plaintiff,**

v.

**Marshall M. BOON, Edith Read Boon, Dan L. Laughhunn, and Amy T. Laughhunn, Defendants.**

Nos. B–89–12022C–11; M–90–49.
Adv. No. A–90–1125; 2:91CV00128.
Adv. No. A–90–2129; 2:91CV00129.

United States District Court,
M.D. North Carolina,
Greensboro Division.

March 1, 1991.

Lacy M. Presnell, III, Marjorie K. Lynch, Raleigh, N.C., for defendants in Adv. No. A–90–2115 and for plaintiffs in Adv. No. A–90–2129.

Edward L. Embree, III, Alesia Rae Alphin, Durham, N.C., for plaintiffs in Adv. No. A–90–2115 and for defendants in Adv. No. A–90–2129.

## MEMORANDUM OPINION

BULLOCK, District Judge.

The issue before the court involves the circumstances under which the district court should, upon motion by a party, withdraw a case or proceeding from the bankruptcy court. The two proceedings involved are an action by the estate of the deceased seller of a now bankrupt business, Contemporary Lithographers, Inc. ("Contemporary"), to collect part of the purchase price from the purchasers, and a second suit by the purchasers against the seller's estate alleging that the seller misrepresented the financial position of that business in violation of federal securities law.

The representatives of the estate of Angus Wilton Kelly ("Kelly") argue that withdrawal of the suit against Kelly's estate, Adversary Proceeding No. A–90–2115, by Contemporary Lithographers, Inc., Marshall and Edith Boon, Daniel and Amy Laughhunn, Marjorie Boon, Dean Marion, James and Effie Marion (collectively, with Contemporary, the "Plaintiff–Purchasers"), is mandatory under 28 U.S.C. § 157(d), be-

cause of the presence of federal securities law issues. The federal statutes relevant to the Plaintiff–Purchasers' suit include: Section 10(b) of the 1934 Securities Exchange Act, and Securities and Exchange Commission Rule 10b–5 (governing securities fraud); Section 29(b) of the Securities Exchange Act (governing a request for rescission of obligations); and Section 12(2) of the 1933 Securities Act (creating liability for "consideration paid" following deceit in the sale of securities). Kelly's representatives also request that their suit to collect the promissory note, Adversary Proceeding No. A–90–2129,[1] which relates to the same transaction as the Plaintiff–Purchasers' suit, be withdrawn for cause under the discretionary withdrawal portion of 28 U.S.C. § 157(d).[2] The court will grant both motions.

### SECTION 157(d)

Mandatory withdrawal is governed by the second sentence of 28 U.S.C. § 157(d), which states: "The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." The court will consider the legislative history of this provision to determine its precise scope. Seemingly all of the references in the Congressional Record leading to the passage of this law were found and discussed in *In re White Motor Corp.*, 42 B.R. 693 (N.D.Ohio 1984). As Judge Aldrich pointed out in *White Motor Corp.*, the text of the section was read into the Record on more than one occasion, *id.* at 699, but there was little discussion of the effect of the rule.

Congress, before enacting the bankruptcy amendments of 1984, of which Section 157(d) was a part, deliberated for two years over an appropriate response to a variety of judicial holdings and other considerations. Among the rulings considered were

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), and the problems Congress sought to address included peculiar aspects of grain elevator bankruptcies, shopping center bankruptcies, and the discharge of debts incurred by drunken drivers. A review of the Record does not reveal the particular concerns motivating Congress to enact Section 157(d), but suggests that the provision was created with some conceptually independent purpose of its own. It apparently was added to Section 157 on March 20, 1984; no such provision appeared in the proposed amendments to the Bankruptcy Code on February 27, 1984, when the text of Section 157 was previously considered. One commentator has argued that Congress may have "had in mind that district judges, which consider such matters on a daily basis, are better equipped to" decide cases involving application of non-bankruptcy federal laws. 1 *Collier on Bankruptcy* ¶ 3.01, at 3–65 (15th ed. 1990).

Whatever Congress's motivation in enacting Section 157(d), two discussions concerning the application of the law indicate Congress's intent regarding its impact. Senator DeConcini submitted the following explanation in the Senate:

This provision concerns mandatory withdrawal of proceedings from the bankruptcy judge where the district court determines that the resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. *The district court should withdraw* such proceedings only *if the court determines that* the assertion that *other laws regulating organizations or activities affecting interstate commerce are in fact likely to be considered, and* should *not* allow a party to use this provision to

---

**1.** The suit by Kelly's representatives does not present non-Title 11 federal issues; it raises only state law contract and statutory claims.

**2.** 28 U.S.C. § 157(d) provides in part: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section on its own motion or on timely motion of any party, for cause shown."

require withdrawal *where such laws are not material to the resolution of the proceeding.* The district court should refuse withdrawal if withdrawal would unduly delay administration of the case, considering the status of the case, the importance of the proceeding to the case, and the relative caseloads of the district court and the bankruptcy judge.

130 Cong.Rec. 17155–17156 (1984) (emphasis added). The Senator's explanation illuminates what Congress meant when it said that withdrawal is required when these statutes have to be *considered.* If a party to a case is federally regulated, such as a bank or securities brokerage, but no federal regulation applies to the dispute at hand, the court need not withdraw the proceeding because no federal regulation will have to be considered. *See American Biomaterials Corp. v. Univ. of Florida,* 1989 WL 144931 (D.N.J.) (CIV. No. 89–4148 [CFS]) (Defendant in a breach of license suit claimed that since rights protected by federal trademark and patent law were at issue, withdrawal was mandatory. The court responded that the suit was governed by contract law; accordingly, federal property law did not warrant consideration.). But if federal regulations determine the outcome of a dispute, as would standards for liability set by the Securities and Exchange Commission for acts of insider trading in a securities fraud suit, then the mandatory withdrawal provision would apply.[3]

Statements made in the House of Representatives about this particular provision also provide an understanding of how Section 157(d) must be applied. On March 21, 1984, Representative Kramer observed that proposed amendments "create a new section 157 in the bankruptcy code." Representative Kramer then asked Representative Kastenmeier which laws constituted the kinds of laws which would trigger the mandatory withdrawal provision, observing that the statute's reference to laws of the United States, regulating organizations or

" 'activities affecting interstate commerce' is very broad language." Kastenmeier responded that the language was to be construed narrowly, applying to cases in which "both title 11 issues and other Federal laws including cases involving the National Labor Relations Act, civil rights laws, *Securities and Exchange Act of 1934,* and similar laws" were involved, but not asbestosis cases filed against manufacturers, since "[t]hose are essentially State issues." (Emphasis added). That concluded the House discussion on Section 157 for the day.

*White Motor Corp., supra,* added an additional twist to its analysis of when withdrawal is required. It said that to avoid abuse or over-use of the withdrawal provision, even when federal statutes are to be considered, a district court should not withdraw the case from bankruptcy court unless "such consideration is necessary for the resolution of a case or proceeding." *In re White Motor Corp.,* 42 B.R. at 703. Thus, where the existence of liens created by federal law must be considered according to the Bankruptcy Code, but where no such liens in fact apply to the assets of the estate, withdrawal would be inappropriate, even though the court must, technically speaking, consider the federal law. *Id.*

Applying Section 157(d) to bankruptcy proceedings in which federal securities laws have been implicated, district courts have generally granted timely withdrawal motions. In the case *In re American Solar King Corp.,* 92 B.R. 207, 208 (W.D.Tex. 1988), investors filed a securities fraud suit against a bankrupt corporation, alleging that false financial statements were issued by the company, and the court considered a mandatory withdrawal motion. The court explained that various factors supported mandatory withdrawal in securities fraud cases: the legislative history of Section 157(d) specifically mentions withdrawal in securities cases; the familiarity with non-bankruptcy federal law possessed by dis-

---

**3.** The last sentence of Senator DeConcini's explanation suggests that withdrawal might be discretionary. That inference, however, is inconsistent with the plain language of the statute, which says that the court *shall* withdraw the case, where both title 11 and other federal regulations are, in Senator DeConcini's words, "likely to be considered."

trict courts and lacking in bankruptcy courts; and the holding of at least one other court in a similar case, *Price v. Craddock*, 85 B.R. 570 (D.Colo.1988), favoring mandatory withdrawal. *Id.* at 210–11. The court concluded, "[W]ithdrawal is mandatory." *Id.* at 211.

*Price v. Craddock*, mentioned in *American Solar King*, confronted mandatory withdrawal where the federal securities claims were part of a countersuit filed by a bankrupt businessman, after that businessman was sued for breach of contract and fraud. 85 B.R. at 571. "[R]esolution of the adversary proceeding will require consideration of both Title 11 and non-bankruptcy federal statutes regulating organizations or activities affecting interstate commerce, namely § 10(b) and Rule 10b–5. Withdrawal of reference is therefore mandatory under 28 U.S.C. § 157(d)." *Id.* at 573 (footnotes omitted). *See also In re Bevill, Bresler & Schulman Asset Management Corp.*, 67 B.R. 557, 563 (D.N.J.) ("On application of the Securities and Exchange Commission … AMC's Chapter 11 case was withdrawn from the Bankruptcy Court to the District Court pursuant to 28 U.S.C. § 157(d)."), *aff'd*, 805 F.2d 120 (3d Cir.1986).

At the other end of the spectrum are cases in which the federal claims are irrelevant to the proceedings. Under such circumstances, courts have denied withdrawal. Thus, where a bankruptcy court ruled upon whether to sell a condominium from the estate of a bankrupt entrepreneur, the possibility that federal laws would be implicated by the sale of the condominium was not an issue the resolution of which was required for the bankruptcy court to decide whether to sell the condominium. *Tedesco v. Mishkin*, 53 B.R. 120, 123 (S.D.N.Y. 1985). Withdrawal based upon the possible presence of federal issues was therefore not mandatory. *Id.*

## APPLICATION OF THE LAW

■ In the suit against Kelly's estate alleging federal securities law violations, Adversary Proceeding No. A–90–2115, Kelly's representatives argue that withdrawal is mandatory.[4]

Prior to August 2, 1988, Kelly was the principal shareholder and president of Contemporary.[5] In that capacity, Kelly obtained financing from First Federal Savings and Loan Association of Raleigh, which in turn required Kelly to file financial statements and reports on the financial health of the business. Kelly is alleged to have double-counted assets as both work-in-progress and accounts receivable in those statements, failed to write off uncollectible accounts, and calculated the value of certain assets on the basis of what liabilities had been incurred—not their true value—in order to show a false profit.

Sometime in 1988 Kelly began to advertise that Contemporary was for sale. When Marshall Boon and Daniel Laughhunn expressed interest in purchasing the company, they were supplied with copies of the allegedly false financial statements Kelly had been supplying to First Federal. On July 6, 1988, the parties entered into a stock purchase agreement, and the sale was consummated on August 2, 1988, at which time money and stock changed hands. A loan Kelly previously made to Contemporary was repaid, and Contemporary executed a $255,874.00 promissory note to Kelly, with payments scheduled to begin on that note on August 2, 1988. Contemporary was further obligated to employ Kelly for a period of years following the sale. For their part, the Boons and Laughhunns personally guaranteed the promissory note to Kelly and put $170,-000.00 into the business. The Marions and Marjorie Boon also invested in the company.

---

4. The statute provides that either the plaintiff or the defendant can move for mandatory withdrawal. It states that the requirements of the section are triggered "on timely motion of a party," presumably meaning either party. 28 U.S.C. § 157(d).

5. The facts are taken as alleged in the Plaintiffs' complaint for the purpose of determining whether resolution of that complaint against Kelly's estate presents questions under Title 11 and other federal laws.

Marshall Boon and Daniel Laughhunn gradually discovered that all was not well at Contemporary; indeed, Contemporary was allegedly losing money each month it stayed in operation. In August of 1989, Contemporary filed for bankruptcy relief. Under these circumstances there is little doubt that a court addressing the Plaintiff–Purchasers' suit must consider federal securities laws in order to resolve the controversy. Clearly, the requirements of the securities laws will have to be considered to resolve the issue of Kelly's estate's liability for securities fraud.

Additionally, since Contemporary paid money to Kelly, and is obligated to pay more, in an exchange based upon allegedly false representations, Title 11 seems implicated here. Title 11 issues include whether Contemporary—the bankrupt corporation—owes any debt to Kelly's estate, to be paid out of the company's remaining assets, and whether Kelly's estate owes the bankrupt estate funds that were fraudulently transferred or otherwise paid through avoidable transactions. The provisions of Title 11 will resolve a great deal of the question, "Who owes who how much?"

Just as the courts in *American Solar King* and *Craddock* determined that withdrawal was mandatory, this court holds that Section 157(d) applies to the suit against Kelly's estate.

### ARGUMENTS AGAINST WITHDRAWAL

The Plaintiff–Purchasers have two reasons for claiming that the mandatory withdrawal rule of Section 157 does not apply to their suit. First they claim that their suit does not involve consideration of federal laws other than Title 11, since application of these securities laws would be uncomplicated. They say that there either was or was not actionable fraud, and that the court does not need actually to consider the securities laws to decide the question. This argument is founded upon the district court's decision in *In re Johns–Manville Corp.*, 63 B.R. 600 (S.D.N.Y.1986), which indicated that, to ensure that Section 157(d) is narrowly construed, the need to apply

federal law to resolve a dispute which also involves consideration of Title 11 will not mandate withdrawal *unless* "significant *interpretation*" of the federal law is required to resolve the controversy. *Id.* at 602 (emphasis in original).

■ This court does not believe that an unclear or complex federal statute is a prerequisite to mandatory withdrawal under Section 157(d). Senator DeConcini spoke of cases in which non-bankruptcy federal laws "are in fact likely to be considered," and Representative Kastenmeier said that the section would apply when federal laws would affect the outcome of the suit. *White Motor Corp.*, interpreting the legislative history, found a need for actual consideration of federal laws, and held that these laws had to not only be considered but had to be essential to resolving the dispute one way or another. None of these authorities, however, command that the non-bankruptcy federal law in a case must not only be considered, and determinative of some essential question, but also must be so vague and uncertain as to require "significant interpretation." Nor does the plain language of the statute suggest such a requirement.

The Plaintiff–Purchasers' second argument for opposing withdrawal of this case involves two contentions. They assert that, even if other federal laws must be considered to resolve Adversary Proceeding No. A–90–2115, the proceeding does not require consideration of material *Title 11* issues. But even if it does, they add, any Title 11 issues can be addressed in a "straightforward" manner, without the need for any significant interpretation.

■ The court believes that if a proceeding arises in a Title 11 case and presents a non-Title 11 federal question which will affect the outcome of the proceeding mandatory withdrawal applies. Furthermore, the court does not believe that controversies concerning federal laws other than Title 11 which arise in Title 11 cases must be excluded from the scope of the mandatory withdrawal provision simply because the proceeding for which withdrawal is sought will not include material

Title 11 questions once withdrawn. Given Congress's intent to keep non-bankruptcy questions in district courts, which are more experienced at handling questions of non-bankruptcy federal law than the specialized bankruptcy courts, it would make no sense to prevent withdrawal from a bankruptcy court where there is a lack of bankruptcy questions. In the words of another court,

> Other courts, a minority, apply section 157(d) literally and use the mandatory withdrawal provision only when resolution of the proceeding requires 'substantial and material' consideration of both bankruptcy and non-bankruptcy law. This position has not attracted as many followers as that espoused in *White Motors* because it seemingly defeats the whole purpose of section 157(d), the withdrawal of matters requiring the application of non-bankruptcy law from the relatively less experienced bankruptcy court to the more experienced district court. Under the minority view, it may happen that issues in which the bankruptcy court is less experienced remain with it because there are no novel, material bankruptcy issues. If the intent of section 157(d) is to have substantial and material non-bankruptcy matters determined by the district court, it would seem incongruous to prevent their withdrawal just because there are no substantial and material bankruptcy questions that are also involved.

*In re St. Mary Hosp.*, 115 B.R. 495, 497 (E.D.Pa.1990) (citations omitted). Even one court receptive to *Johns–Manville*'s holding that significant interpretation of some federal law is a prerequisite to mandatory withdrawal found the argument that a controversy arising in a Title 11 case and requiring application of non-Title 11 federal laws should not be withdrawn from the bankruptcy court because of a lack of additional bankruptcy aspects to be unreasonable. *In re Chateaugay Corp.*, 86 B.R. 33, 37 (S.D.N.Y.1987).

Nevertheless, assuming *arguendo* that a contest must not only arise in a Title 11 case but must also require further consideration of Title 11, in addition to other federal laws, for mandatory withdrawal to apply, it is apparent that such Title 11 issues would arise during the prosecution of Adversary Proceeding No. A–90–2115. Title 11 questions include its definition of which assets are assets of the estate, its rules concerning disbursement of damages awarded to the estate, and its provisions concerning the assumption or rejection of executory contracts and their relation to the Plaintiff–Purchasers' request for rescission of Contemporary's continuing contractual duties to Kelly; furthermore, Title 11's provisions concerning the rights of a bankrupt corporation seeking compensation from one alleged to have wronged it could come to have a material effect on the controversy.

As for the Plaintiff–Purchasers' argument that even if Title 11 issues are present they are simple issues and thus do not merit withdrawal, the court reiterates that neither Section 157(d) nor the legislative history of that law supports the conclusion that a need for "significant interpretation" of the federal laws involved is a prerequisite to withdrawal.

## CONCLUSION

■ The court will order Adversary Proceeding No. A–90–2115, the purchasers' suit against the seller's estate, withdrawn from the bankruptcy court pursuant to the mandatory withdrawal provisions of Section 157(d). Adversary Proceeding No. A–90–2129, the estate's suit to collect debts arising from Contemporary's sale, will also be withdrawn, since the interest of courts in trying together all claims arising from the same transaction is adequate cause to exercise discretionary power.