In re: Karsten ("Cash") MAHLMANN,
Debtor.

Morton DAVIS and Richard McCall, for themselves and all others similarly situated, as holders of claims derivative of Advanced Portfolio Management, an Illinois Limited Partnership, and Compass Futures Fund, an Illinois Limited Partnership, and as assignees of the interests of Kenneth M. Rosenzweig, Special Master in CFTC v. Stotler Funds, Inc., No. 90 C 4387 (N.D.Ill.), in and to Advanced Portfolio Management, an Illinois Limited Partnership, and Compass Futures Fund, an Illinois Limited Partnership, Plaintiffs,

v.

Karsten ("Cash") MAHLMANN,
Defendant.

Claims of Morton Davis and Richard McCall in the same capacities.

No. 92 C 322.

United States District Court,
N.D. Illinois, E.D.

Jan. 7, 1993.

Constantine John Gekas, Adrianne S. Harvitt, Harvitt & Gekas, Ltd., Chicago, IL, for plaintiffs.

Jonathan A. Backman, Mayer, Brown & Platt, Chicago, IL, for debtor/defendant.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiffs Morton Davis and Richard McCall have moved to withdraw reference of this adversary action (Adv. No. 91 A 1323) from the bankruptcy court pursuant to 28 U.S.C. § 157(d). The action, which is currently pending before Judge James in the bankruptcy case (No. 91 B 17950), alleges that certain debts of the defendant, debtor Karsten "Cash" Mahlmann ("debtor Mahlmann") are nondischargeable. Plaintiffs' motion to withdraw the reference is denied.

## FACTUAL BACKGROUND

Debtor Mahlmann was an officer in several related companies involved in the commodity futures business under a master holding company known as Stotler Group, Inc. The plaintiffs were investors in two commodity pools which were operated by Stotler Funds, Inc., one of the related companies. In mid–1990, the Commodity Futures Trading Commission ("CFTC") discovered that officers of the Stotler Funds, Inc. had looted the two commodity pools. The CFTC filed a civil enforcement action in this court, *CFTC v. Stotler Funds, Inc.*, No. 90 C 4763, in which Judge Shadur put the operations of the company in the care of a special master. Shortly thereafter, the Stotler companies filed bankruptcy, Case No. 90 B 4387 (N.D.Ill.).

In late 1990, the plaintiffs filed a civil damage action against various officers and directors of the Stotler companies, including debtor Mahlmann, claiming fraud under federal and state law. *Davis v. Coopers & Lybrand, et al.*, No. 90 C 7173. (Plaintiffs' Memorandum in Support, Exhibits 1 and 2). On March 9, 1992, in a memorandum opinion evaluating the plaintiffs' second amended complaint, which had been filed on June 5, 1991, Judge Shadur dismissed all the plaintiffs' claims under the Commodity Exchange Act and RICO, partially dismissed without prejudice the claims under the 1933 Securities Act § 11, dismissed without prejudice the claims under the 1933 Securities Act § 12(2), reserved ruling on claims under the 1934 Securities Act § 10(b) pending further discovery, and reserved ruling on the state law claims pending further definition of the federal claims. *Davis v. Coopers & Lybrand*, 787 F.Supp. 787 (N.D.Ill.1992). Judge Shadur expressed concern about the

lack of particularity in the plaintiffs' fraud allegations, but acknowledged that the defect might be resolved, for some of the claims, after further discovery. *Id.* at 792–794.

Debtor Mahlmann filed bankruptcy on August 23, 1991, Case No. 91 B 17950. The plaintiffs were listed as creditors. (Plaintiffs' Memorandum in Support, p. 3.) Pursuant to Section 362(a)(1) of the Bankruptcy Code, the filing of the debtor's bankruptcy petition stayed the civil actions against him. Judge James had set December 24, 1991 as the deadline for the filing of nondischargeability actions. On December 24, 1991, the plaintiffs filed their adversary complaint alleging the nondischargeability of debtor Mahlmann's debt to plaintiffs pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). (Debtor Mahlmann's Memorandum in Response, Ex. A.) The factual allegations contained in plaintiffs' adversary complaint were brief and limited, but incorporated by reference the lengthy second amended complaint which the plaintiffs had filed in the action before Judge Shadur in Case No. 90 C 7173. (Debtor Mahlmann's Memorandum in Response, Exhibit A.)

On January 8, 1992, debtor Mahlmann moved for authority to pursue a motion to dismiss the plaintiffs' adversary action on statute of limitations grounds. (Debtor Mahlmann's Memorandum in Response, p. 4.) On January 14, 1992, Bankruptcy Judge James ordered a briefing on the motion and set a hearing date. (Debtor Mahlmann's Memorandum in Response, p. 4.) The following day, January 15, 1992,[1] the plaintiffs filed this motion to withdraw reference of this adversary action.

On January 23, 1992, the plaintiffs moved for reassignment of this motion from this court to Judge Shadur's court. (Debtor Mahlmann's Memorandum in Response, p. 5.) Following briefing and oral

argument, Judge Shadur denied the motion for reassignment and ordered that the motion to withdraw reference should be resolved by this court.[2] (Debtor Mahlmann's Memorandum in Response, p. 5.)

On November 18, 1992, Bankruptcy Judge James conducted an evidentiary hearing as to debtor Mahlmann's motion to dismiss premised on the statute of limitations and denied the motion.

## DISCUSSION

Plaintiffs maintain that their adversary action alleging nondischargeability is subject to mandatory withdrawal of reference from the bankruptcy court pursuant to 28 U.S.C. § 157(d), which provides in the pertinent part:

> The district court shall, on a timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and the laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (1992).[3]

Original jurisdiction in bankruptcy cases lies in the United States District Courts, but such cases are usually automatically referred to the bankruptcy courts pursuant to 28 U.S.C. § 157(a). *In re Stavriotis,* 111 B.R. 154, 156 (N.D.Ill.1990). Section 157(d) provides for the withdrawal of such references in limited circumstances. *Id.*

Plaintiffs maintain that because their nondischargeability complaint raises issues under the federal securities laws and was made in a timely manner, withdrawal of the reference is required.

The debtor Mahlmann maintains plaintiffs' motion must be denied for three reasons: (1) the motion is untimely and prejudicial, as it was filed long after the plaintiffs knew of the grounds they now assert for withdrawal of the reference; (2) the

---

**1.** There seems to be some confusion in the parties' briefs as to the date the plaintiffs' motion was filed. This court's docket record indicates January 15, 1992 is the correct date.

**2.** Judge Shadur ruled from the bench that the cases were not related.

**3.** Section 157(d) also contains a provision for permissive withdrawal for cause. While the debtor reserved the right to file a supplementary brief on permissive withdrawal if necessary, the plaintiffs' motion argues only mandatory withdrawal. This opinion only addresses mandatory withdrawal.

motion is meritless, as the action raises no substantial nonbankruptcy federal issues; (3) the motion is baseless, as Judge Shadur has already dismissed the relevant portions of the complaint. (Debtor Mahlmann's Memorandum in Response, p. 2.)

### I. *Timeliness*

■ The threshold question in evaluating a motion to withdraw the reference under § 157(d) is whether plaintiffs' motion filed five months after debtor Mahlmann filed his bankruptcy petition was made in a timely manner. *In re Stavriotis,* 111 B.R. 154, 157 (N.D.Ill.1990). If the motion is not made in a timely manner, the parties' rights under § 157(d) are deemed waived. *Id.* The statute provides little guidance as to what constitutes "timely." Courts, however, have generally defined timely as "as soon as possible after the moving party is aware of grounds for withdrawal of reference" or as "at the first reasonable opportunity after the moving party is aware of grounds for withdrawal of reference." *In re Sevko, Inc.,* 143 B.R. 114 (N.D.Ill.1992). The two statements of the standard are considered identical, any difference being purely a matter of semantics. *Id.* The reason for the timeliness requirement is to prevent parties from forum shopping, stalling, or otherwise engaging in obstructionist tactics. *In Matter of Lissner Corp.,* 115 B.R. 604, 608–612 (N.D.Ill.1990); *In re Giorgio,* 50 B.R. 327, 328–329 (D.Rhode Island 1985); *See also, In re White Motor Corp.,* 42 B.R. 693 (N.D.Ohio 1984).

■ For gauging timeliness, the key issue is when the moving party was first aware nonbankruptcy federal laws must be dealt with in resolving the case. Courts have varied widely in the amount of delay a moving party is permitted between learning of grounds for withdrawal and actually filing a motion to withdraw before the motion is deemed untimely. *In re Sevko, Inc.,* 143 B.R. 114 (N.D.Ill.1992) (five months timely given special circumstances); *In re Stavriotis,* 111 B.R. 154 (N.D.Ill.1990) (five months not timely); *In Matter of Lissner Corp.,* 115 B.R. 604 (N.D.Ill.1990) (seven weeks timely); *In re IQ Telecommunications, Inc.,* 70 B.R. 742 (N.D.Ill.1987) (one

year not timely); *Laine v. Gross,* 128 B.R. 588 (D.Maine) (six months untimely); *In re Securities Group 1980,* 89 B.R. 192 (M.D.Fla.1988) (failure to file motion with answer untimely); *Burger King Corp. v. B–K of Kansas, Inc.,* 64 B.R. 738 (D.Kansas 1986) (ten months was timely); *In re Giorgio,* 50 B.R. 327 (D.Rhode Island 1985) (six months not timely).

■ In most of the cases, the moving party is responding to the pleadings of their opponent which raised the other federal laws mandating withdrawal of reference. In this case, it was the plaintiffs' own pleadings which raised the federal issues which the plaintiffs claim merit withdrawal of reference.

The court in *Burger King Corp. v. B–K of Kansas, Inc.,* 64 B.R. 728 (D.Kansas 1986), held that a debtor's delay in waiting ten months to file a motion to withdraw the reference as to RICO and antitrust issues raised in the debtor's own counterclaim did not make the motion untimely. *Id.* at 731. In adopting this rather generous view, the court in *Burger King* reasoned that there had been no showing of prejudice and that it could receive all the discovery that had taken place in the bankruptcy court. *Id.* The *Burger King* court had some pause, given that the federal issues were raised in the moving party's own pleadings, but decided ten months was an allowable, but absolute, limit. *Id.* at 731.

A less generous view was taken by the court in *In re Securities Group 1980,* 89 B.R. 192 (M.D.Fla.1988). The *Securities Group* court held that a defendant's motion to withdraw reference was not timely because it was not filed *contemporaneously* with his answer and counterclaim. *Id.* at 194. The court stated that because the answer and counterclaim raised issues under RICO and the federal securities laws, the defendant was clearly on notice as to the existence of a basis for withdrawal of reference at that time. *Id.* There was no reason to delay filing a motion for withdrawal of the reference after the filing of answer/counterclaim. *Id.* The court concluded the thirty-day period for filing an

answer was a suitable guideline for timeliness in such circumstances. *Id.*

In the case at bar, the plaintiffs were clearly on notice of ·their federal claims against debtor Mahlmann at least as early as 1990 when plaintiffs filed their civil action against him and several other Stotler Group defendants. The plaintiffs were aware of their claims when debtor Mahlmann filed bankruptcy on August 23, 1991. The plaintiffs were aware of their claims when they filed the adversary action against debtor Mahlmann in the bankruptcy court on December 24, 1991. Moreover, plaintiffs' nondischargeability complaint incorporated their complaint from their 1990 civil action which included claims under the federal securities laws and other federal statutes. Despite this knowledge, the plaintiffs did not file a motion for withdrawal of the reference until January 15, 1992, nearly a month after they filed their nondischargeability complaint and a full five-months after the debtor filed bankruptcy.

The court notes that the plaintiffs did not move for withdrawal of the reference until after the bankruptcy judge set a briefing schedule on the debtor Mahlmann's motion to dismiss the plaintiffs' adversary action. Evidence of forum shopping is a factor courts may consider in denying a motion to withdraw reference. *In re Giorgio*, 50 B.R. 327, 329 (D.Rhode Island 1985) (motion filed after bankruptcy court set an early trial date); *In re Stavriotis*, 111 B.R. 154 (N.D.Ill.1990) (motion made after possibility for advantageous sale of assets terminated.) The plaintiffs claim the timing of their motion shows no evidence of forum shopping.

In light of all the circumstances, this court holds the plaintiffs' motion for withdrawal of the reference was not timely.

## II. *Federal Issues*

■ Section 157(d) provides mandatory withdrawal when the proceeding requires "consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (1992). Given this court's decision regarding the timeliness of the plaintiffs' motion, this issue will be addressed briefly.

There is a conflict of authority as to what federal issues must be raised. One set of authorities state that the language should be taken literally, that withdrawal of reference is only required if the proceeding raises substantial issues under *both* the bankruptcy laws (Title 11) and another non-bankruptcy federal statute affecting interstate commerce. *See Collier on Bankruptcy,* ¶ 3.01 at 3–68, 69 (Matthew Bender 15th ed. 1991). The alternate view is that the language pertaining to Title 11 is disregarded and withdrawal of the reference is required only if the proceeding requires resolution under a nonbankruptcy federal statute. *In re Contemporary Lithographers, Inc.,* 127 B.R. 122, 127–128 (M.D.N.C.1991).

As neither party disputes the existence of issues under Title 11, this court will restrict its analysis to whether the motion for withdrawal of reference raises sufficient issues under a nonbankruptcy federal statute.

■ Generally, withdrawal of the reference is only required if resolving the proceeding requires a "significant and material application" of a nonbankruptcy federal statute. *In re Blinder Robinson & Co., Inc.,* 135 B.R. 892, 894 (D.Colo.1991); *In Matter of Lissner Corp.,* 115 B.R. 604, 610 (N.D.Ill.1990). The courts apply Section 157(d) narrowly, respecting the presumption that bankruptcy cases are to be adjudicated by bankruptcy judges in bankruptcy courts, to prevent parties from using the provision as an "escape hatch". *In re Stavriotis,* 111 B.R. 154, 156–158 (N.D.Ill.1990); *In re IQ Telecommunications,* 70 B.R. 742, 746 (N.D.Ill.1987); *Sibarium v. NCNB Texas Nat. Bank,* 107 B.R. 108, 111 (N.D.Tex.1989).

The courts have differed as to how they define a "significant and material" application of a nonbankruptcy federal statute. Some courts take a restrictive view and deem withdrawal only necessary if the proceeding requires a significant interpretation of a federal statute, in such situations

as a conflict between statutes, a case of first impression, or a constitutional challenge. *In re Adelphi Institute,* 112 B.R. 534, 537 (S.D.N.Y.1990) (RICO action not complex enough to warrant removal). Matters that require a bankruptcy judge to merely apply a well-established federal law to particular facts does not warrant withdrawal of reference. *Id.; Dow Jones/ Group W Television v. NBC, Inc.,* 127 B.R. 3, 4 (S.D.N.Y.1991); *Blinder Robinson,* 135 B.R. at 895. Other courts take a different view, stating that the application of federal law need not be complicated to warrant mandatory withdrawal. *In re Contemporary Lithographers, Inc.,* 127 B.R. 122, 127 (M.D.N.C.1991).

■ Generally, where resolution of a claim requires application of the federal securities laws, the reference is withdrawn. *Price v. Craddock,* 85 B.R. 570, 573 (D.Colo.1988); *In re American Solar King Corp.,* 92 B.R. 207, 209–211 (W.D.Tex. 1988); *In re Contemporary Lithographers, Inc.,* 127 B.R. 122, 126 (M.D.N.C. 1991). The district court in *In re Blinder Robinson & Co., Inc.,* 135 B.R. 892, 894–95 (D.Colo.1991), however, held that withdrawal is not required in a case implicating the securities laws, where a "simple application" rather than a "significant interpretation" of the statute was required.

A district court addressing the question of withdrawing the reference may consider the likelihood that the bankruptcy court will actually have to resolve the federal issues and decline to withdraw the reference if such a resolution is speculative. *Sibarium v. NCNB Texas Nat. Bank,* 107 B.R. 108, 111 (N.D.Tex.1989); *In re Adelphi Institute,* 112 B.R. 534, 537 (S.D.N.Y. 1990); *See also, In re Candy Braz,* 62 B.R. 3 (N.D.Ill.1986).

Plaintiffs have raised issues under the federal securities laws as to the debtor's allegedly fraudulent conduct. The portions of the plaintiffs' complaint which were not dismissed, or were dismissed without prejudice, include claims under 1933 Securities Act § 11 and § 12(2) and 1934 Securities Act § 10(b). Clearly, as debtor Mahlmann maintains, fraud is a matter a bankruptcy judge is competent to evaluate. As argued by the plaintiffs, however, this case potentially raises an issue as to whether the debtor is a "controlling person" under Section 10(b) and Section 12(2). (Plaintiffs' Memorandum in Reply, p. 4.) Judge Shadur noted in the civil action brought by the plaintiffs, the Seventh Circuit has not set an express standard for establishing "controlling person" liability. *Davis,* 787 F.Supp. at 801.

However, the presence of securities laws claims in no way waives the timeliness requirement of § 157(d). *See In Re Securities Group 1980,* 89 B.R. 192 (M.D.Fla. 1988); *In re Stavriotis,* 111 B.R. 154 (N.D.Ill.1990). Withdrawal of reference is not warranted.

III. *Dismissal of the Complaint*

■ In light of this court's decision regarding the timeliness of the plaintiffs' motion, debtor Mahlmann's last point will be addressed only briefly.

Debtor Mahlmann asserts that the plaintiffs' motion must fail because Judge Shadur dismissed most of the plaintiffs' second amended complaint in the tangentially related action. (Debtor Mahlmann's Memorandum in Response, p. 9–11.) Debtor Mahlmann claims that Judge Shadur's dismissal of the fraud-based claims, under § 12 of the 1933 Securities Act and § 10(b) of the 1934 Securities Act, is especially significant in that plaintiffs' nondischargeability action pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4) is based on alleged fraud of the debtor. (Debtor Mahlmann's Memorandum in Response, pp. 9–12.) Debtor Mahlmann does not state any legal theory for this belief. This court presumes debtor Mahlmann's intended basis is res judicata.

■ A dismissal in an earlier court proceeding can have res judicata effect as to the sufficiency of the complaint in a later proceeding. 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4439 (1977 and 1992 Supp.). However, plaintiffs' complaint has not been completely dismissed in the proceeding before Judge Shadur. The plaintiffs' 10(b) claims have

not as yet been dismissed. The dismissal of the other securities laws counts was without prejudice. At present, the complaint remains viable before Shadur and the plaintiffs continue to actively litigate the case. (Plaintiffs' Memorandum in Reply, p. 4.)

## CONCLUSION

For the reasons stated herein, the plaintiffs' motion to withdraw the reference from the bankruptcy court is DENIED.