### In the Matter of LISSNER CORPORATION, Debtor.

#### No. 90 C 2624.

United States District Court,
N.D. Illinois, E.D.

June 4, 1990.

As Amended July 31, 1990.

Bruce Perlin, Francis J. Carey, Terence G. Craig, Central States Law Dept., Rosemont, Ill., for Central States SE & SW Pension Fund.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

In bankruptcy proceedings currently pending before the Honorable Erwin I. Katz, William A. Brandt, Jr., as Trustee of

the estate of Lissner Corporation (the "Trustee"), has filed a motion to modify a portion of the claim filed against the estate by the Central States, Southeast and Southwest Areas Pension Fund ("Central States"). Pending before this Court is Central States' motion pursuant to 28 U.S.C. § 157(d) to withdraw the reference to the Bankruptcy Court of all further proceedings on the Trustee's motion to modify, on the ground that resolution of that motion would require substantial and material consideration of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), as well as the amendments thereto embodied in the Multiemployer Pension Plan Amendment Act of 1980, 29 U.S.C. § 1381 *et seq.* ("MPPAA"). For the reasons set forth below, the Court grants Central States' motion to withdraw the reference, but refers the matter back to the Bankruptcy Court for a report and recommendation subject to *de novo* review by this Court.

## II. BACKGROUND

The Court has culled the following facts from the parties' respective memoranda in support of and opposition to the motion to withdraw the reference. Except as otherwise noted, these background facts are undisputed.

Lissner Corporation ("Lissner") commenced reorganization proceedings under Chapter 11 of the Bankruptcy Code on September 18, 1985. On November 25, 1985, the case was voluntarily converted to a Chapter 7 proceeding. William A. Brandt, Jr. was appointed interim Trustee for the estate on December 3, 1985, and later confirmed as the permanent Trustee.

Prior to bankruptcy, Lissner had been a participant in a multi-employer pension plan administered by Central States, and in that capacity had been obliged to make periodic contributions to Central States. However, on or about February 28, 1984, the employees of Lissner, who until that date were represented by the Teamsters union, decertified their collective bargaining unit. As a result, Lissner effected a "complete withdrawal" from the pension fund and in turn incurred withdrawal liability to Central States pursuant to the provisions of ERISA, 29 U.S.C. § 1383.

On November 19, 1985, Central States filed a proof of claim in the bankruptcy proceedings in the amount of $531,997.44 (the "C–10 claim"). Of this total, $2,562.27 was a claim for past contributions which were due and owing to Central States as of the effective date of Lissner's withdrawal from the pension plan. The remainder, $529,435.17, represented the claim for withdrawal liability as calculated pursuant to 29 U.S.C. § 1381.

The Trustee filed an objection to the C–10 claim on August 21, 1989, asserting that the amounts which Central States demanded for past due contributions and withdrawal liability were unsupported and that Lissner's books reflected no outstanding debt to Central States. In response to the objection, on September 13, 1989, Central States attorney Bruce Perlin ("Perlin") wrote a letter to the Trustee's attorneys which noted that supporting documentation had been attached to the C–10 claim, and which enclosed additional materials explaining how the C–10 claim had been calculated. On October 27, 1989, Central States filed a formal response to the objection which maintained that the C–10 claim was adequate and urged the Bankruptcy Court to overrule the objection and allow the claim.

Beginning in November, 1989 and continuing over the succeeding months, Perlin and Stephen T. Bobo, one of the Trustee's attorneys ("Bobo"), had a number of conversations and exchanged correspondence with regard to the factual and legal bases for Central States' C–10 claim and the Trustee's resistance thereto, and explored the possibility of settling the claim. At some point during these discussions, Bobo indicated that the Trustee might seek to reduce the C–10 claim pursuant to § 4225(b) of the MPPAA, 29 U.S.C. § 1405(b). Section 1405(b) reduces the withdrawal liability of an insolvent employer whose assets are being liquidated to 50 percent of the amount otherwise due and

provides for the remainder to be paid from those funds, if any, which remain in the estate after the first 50 percent and all other liabilities are deducted. *See Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 105 (2d Cir.1986). Perlin asserts that Bobo did not raise § 1405(b) as a basis for challenging the C–10 claim until February 2, 1990; Bobo suggests that it may have been earlier.

When attempts at settlement reached an impasse later in February, 1990, Bobo informed Perlin that the Trustee would in fact seek to reduce Lissner's withdrawal liability pursuant to § 1405(b). Bobo reported this intent to the Bankruptcy Court at a status hearing on February 21, 1990. The following colloquy ensued between counsel and Judge Katz:

> MR. BOBO: Your Honor, we're here before you on objections to claims.... I'm involved in the Central States matter. There's a little factual English concerning the Central States claim, and I think it would be wise to attempt to brief the legal issues first because Mr. Perlin thinks that he may be precluded from litigating any of them due to the nature of the [E]risa ... and Multi–Employer Pension Plan Act.
>
> THE COURT: Is somebody going to file a motion?
>
> MR. BOBO: What we thought we'd do is file a brief basically in flushing out our objections to their claim and they would respond to it and we would reply and the court would—
>
> THE COURT: Well, I assume it's going to be in the nature of a motion for either partial judgment on the pleadings or summary judgment or something like that.
>
> MR. BOBO: Along those lines.
>
> THE COURT: Well, when are you going to get it filed? When are you going to come in on a motion?

> MR. BOBO: I guess it would be their motion?
>
> MR. PERLIN: Well, Your Honor, I have a question whether because it is purely an [E]risa matter whether we should be litigating that here or whether we should withdraw the reference to the District Court.
>
> THE COURT: Make a motion.
>
> MR. PERLIN: That's fine. I don't know at this point. We may litigate that issue here. The objection that was filed and we responded to was purely one of information. I don't have anything to respond to that I haven't already done as far as the issues that I talked to Mr. Bobo about, which is specific [E]risa statutory provisions that we say are waived by the failure to arbitrate. I would be filing a motion for summary judgment, but I'd like to have their brief first to see what I'm responding to.
>
> THE COURT: Well, there's one easy solution as far as the court is concerned. I'll give you a trial date, and that way anybody that's going to make a motion better bring it before then because my final hearing orders provide a cut-off date for motions. Now, if you want to do it, I'll give you—you know, this is not that old, so I'll give you another status date if you want to decide what you are going to do without the pressure of a trial date, but if you're not going to do it by then, you know, next time around I'm going to give you a trial date.
>
> MR. BOBO: Judge, I think both parties do want to brief the legal issues, and there may be factual issues.

Judge Katz then set another status hearing date of March 21, 1990. Following the status hearing on February 21, 1990, Perlin and Bobo met to discuss a briefing schedule on the Trustee's § 1405(b) motion.[1] Perlin did not make further mention of pursuing withdrawal of the reference during that discussion. On March 19, 1990, the Trustee filed his motion to modify the

---

1. Although both the parties and the Court refer to the Trustee's motion as the "§ 1405(b) motion," the motion actually seeks two different forms of relief under two different statutes. In part, the motion seeks to reduce the Trustee's withdrawal liability to Central States pursuant to 29 U.S.C. § 1405(b). However, as discussed further below, the motion also seeks to equitably subordinate Central State's C–10 claim to the claims of other creditors pursuant to 11 U.S.C. § 510. To the extent the Court refers to the "§ 1405(b) motion," it is referring to that portion of the Trustee's motion which is based upon § 1405(b).

C–10 claim under § 1405(b). At the March 21, 1990 hearing, Judge Katz proceeded to enter a briefing schedule on the motion which had been agreed upon by the parties. Perlin made no further mention of seeking to withdraw the reference as to the § 1405(b) motion at this hearing.

The Trustee filed a memorandum in support of his § 1405(b) motion on March 28, 1990 as called for by the agreed briefing schedule. Central States' response was due to be filed on April 27, 1990; however, on that date Perlin contacted an associate of Bobo's to seek the Trustee's consent to a one-week extension of time in which to respond. Perlin indicated at that time that Central States would be filing, in addition to a memorandum addressing the merits of the Trustee's motion, a motion to withdraw the reference. It appears that the Trustee agreed to the extension, although the record is not clear on that point.

Central States filed its response to the merits of the § 1405(b) motion one week later, on Friday, May 4, 1990. According to Perlin, Central States intended to file its motion to withdraw the reference on that date as well, but was unable to do so as the result of difficulties with copying and delivering the motion. Instead, the motion to withdraw the reference was filed on the next business day, Monday, May 7, 1990. The Trustee does not quarrel with Central States' explanation in this regard, and for purposes of evaluating the timeliness of the withdrawal motion, the Court has treated the motion as if it were filed contemporaneously with Central States' memorandum in response to the Trustee's § 1405(b) motion on May 4, 1990.

## III.  ANALYSIS

Central States moves to withdraw the reference of the Trustee's § 1405(b) motion under the authority of 28 U.S.C. § 157(d), which, in relevant part, provides:

The district court shall, on timely motion of a party, ... withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Central States contends that because the § 1405(b) motion requires substantial and material consideration of both ERISA and MPPAA, withdrawal of the reference is required under § 157(d). The Trustee opposes withdrawal solely on the ground that Central States' motion to withdraw the reference was not timely made.

A. *Timeliness of the Motion to Withdraw the Reference*

A motion for withdrawal of the reference pursuant to § 157(d) must satisfy the threshold requirement of timeliness. *In re Stavriotis*, 111 B.R. 154, 157 (N.D.Ill. 1990) (Duff, J.). The statute itself does not provide any guidance as to when withdrawal motions are timely and when they are not; however, this Court has previously adopted the view espoused by a number of courts that "a motion under § 157(d) should be made as soon as possible after the moving party has notice of the grounds for withdrawing the reference." *In re Marina City Associates*, No. 89 C 3453, 1989 WL 206465, 1989 U.S.Dist.Lexis 7025, *19 —*20 (N.D.Ill. June 7, 1989) (Rovner, J.), quoting *In re IQ Telecommunications, Inc.*, 70 B.R. 742, 746 (N.D.Ill.1987) (Moran, J.), and citing *In re Baldwin–United Corp.*, 57 B.R. 751, 753 (S.D.Ohio 1985) (§ 157(d) motion timely if made at "the first reasonable opportunity"). *Accord Stavriotis*, 111 B.R. at 157–58. *See In re Powelson*, 878 F.2d 976, 982 (7th Cir.1989) (noting this interpretation of the timeliness requirement but expressing no position as to its validity). As Central States correctly contends, the determination whether a party has invoked § 157(d) "as soon as possible" or "at the first reasonable opportunity" must be made upon the particular facts of each case. *In re Chateaugay Corp.*, 104 B.R. 622, 623–24 (S.D.N.Y.1989).

The Trustee contends that Central States' motion is untimely in view of the fact that Central States waited to file it until May 7, 1990, after:

(1) Central States had been placed on notice as early as November, 1989 through discussions between Perlin and Bobo that the provisions of ERISA

generally would be implicated by resolution of the claim;

(2) Central States had been placed on notice as of January or February, 1990 as the result of these same discussions that the Trustee might seek to reduce the claim specifically pursuant to § 1405(b);

(3) Perlin and Bobo had discussed a briefing schedule on the Trustee's § 1405(b) motion after the status hearing before Judge Katz on February 21, 1990;

(4) the Trustee filed the § 1405(b) motion on March 19, 1990, and Judge Katz subsequently entered the briefing schedule earlier agreed upon by Perlin and Bobo;

(5) the Trustee filed a memorandum in support of the § 1405(b) motion on March 28, 1990; and

(6) Central States filed a memorandum in response to the Trustee's § 1405(b) motion on May 4, 1990.

In the Trustee's view, even if one were to assume that Central States was not on notice as to the § 1405(b) issue until March 21, 1990, at which time the § 1405(b) motion had been filed and the parties submitted to a briefing schedule contemplating resolution of the motion in the Bankruptcy Court, Central States was nonetheless dilatory in waiting until May 7, 1990 to pursue withdrawal of the reference. The Trustee further argues that as a result of the delay, he has spent considerable administrative time and incurred significant expenses in pursuing the § 1405(b) motion in Bankruptcy Court which will be needlessly duplicated if Central States' motion to withdraw the reference is granted at this stage of the proceedings, thereby reducing the funds available in the estate to compensate creditors. Finally, the Trustee notes that his motion before the Bankruptcy Court not only seeks relief under § 1405(b), but in addition seeks equitable subordination of the C–10 claim pursuant to § 510 of the Bankruptcy Code. See 11 U.S.C. § 510(c). Because Central States has sought to recall only the § 1405(b) portion of the motion, the Trustee argues, granting Central States' motion to withdraw the reference will result in a cumbersome bifurcation of the issues which in turn would add further expense and delay to the administration of the estate.

In response, Central States contends first that the Trustee did not raise § 1405(b) as a basis for challenging its claim until February 2, 1990. The general discussion and exchange of information which had occurred prior to that date could have led to any number of potential ERISA–based challenges to its claim, Central States argues, and it had no way of knowing which, if any grounds, the Trustee might pursue. Central States further argues that even after the Trustee's attorneys advised Perlin that they would specifically rely upon § 1405(b) in challenging the claim, it would have been premature for Central States to seek withdrawal of the reference until the Trustee actually filed his § 1405(b) motion. At the same time, however, Central States notes that Perlin advised both the Trustee and the Bankruptcy Court at the status hearing on February 21, 1990, that Central States might seek to withdraw the reference if the Trustee did ultimately file a § 1405(b) motion. Central States next argues that although there was some delay between the date the Trustee filed the § 1405(b) motion and the date Central States moved to withdraw the reference, Central States acted within the time frame allowed by the Bankruptcy Court for response to the § 1405(b) motion, and the relatively short delay evinces no effort to stall the bankruptcy proceedings. Central States also finds the Trustee's arguments as to prejudice wanting. It contends that the Trustee has failed to demonstrate that it changed its position or course of conduct as the result of the delay, or that the estate or the creditors face any injury other than the costs which necessarily accompany any withdrawal of the reference. Finally, as to the bifurcation question, Central States suggests that the Court could avert this problem by accepting the entirety of the Trustee's motion, including the subordination issue, for resolution. In Central States' view, this course would be particularly appropriate in view of the potential

conflicts between its rights under ERISA on the one hand and equitable subordination on the other. Moreover, if the issues were consolidated before this Court, the parties could simply rest upon the same briefs which they have prepared already, thereby minimizing the costs of withdrawing the reference.

On the record before it, the Court finds that the motion to withdraw the reference is timely. Central States is correct in contending that until the Trustee actually filed his § 1405(b) motion on March 19, 1990, it could not properly have moved to withdraw the reference, for until then there was no cognizable dispute before the Bankruptcy Court implicating federal law other than the Bankruptcy Code and thus no "case or proceeding" which could be removed under § 157(d). *Chateaugay*, 104 B.R. at 624–25; *see also In re Texaco, Inc.*, 84 B.R. 911, 920 (S.D.N.Y.1988).[2] Thus, the real issue here is whether, in view of the seven-week delay between the filing of the Trustee's § 1405(b) motion on March 19, 1990 and the filing of Central States' motion to withdraw the reference on May 7, 1990, Central States acted "at the first reasonable opportunity." Although this delay gives the Court some pause, on balance it concludes that Central States acted with reasonable dispatch.

When the Trustee first advised the Bankruptcy Court of his intent to file a § 1405(b) motion on February 21, 1990, Perlin candidly revealed that Central States had some question as to whether that motion should be resolved there or in the District Court. At the same time, Perlin indicated that Central States could not be sure what action it would take until it had had the opportunity to review the Trustee's motion and the arguments set forth therein. Thus, although the Trustee makes much of the fact that Perlin spoke no more of withdrawing the reference as the parties proceeded to work out a briefing schedule and present that schedule to the Bankrupt-

cy Court for approval, Perlin's eventual announcement that Central States would seek withdrawal should not have come as a complete surprise.

■ Moreover, under the circumstances of this case, the Court does not find it unreasonable for Central States to have taken the time allotted to it for a response on the merits of the Trustee's motion to decide whether or not to seek withdrawal of the reference. Until Central States had seen both the Trustee's motion of March 19 and the supporting memorandum filed nine days later, it could not be sure what the Trustee's arguments as to § 1405(b) were, nor could it properly frame its own arguments in support of withdrawing the reference. After all, mere incantation of a term like "ERISA" is not enough to justify withdrawal of a proceeding from the Bankruptcy Court; rather, resolution of the controversy must demand material and substantial, as opposed to routine, consideration of federal law other than the Bankruptcy Code. *See Eastern Airlines, Inc. v. Air Line Pilots Assoc.*, 1990 WL 5203 (S.D.N.Y. Jan. 24, 1990) (withdrawal of reference not required if controversy would require only "routine application of established legal standards"); *Baldwin–United*, 57 B.R. at 757 ("where resolution of the issue involves predominantly the bankruptcy laws as opposed to other federal law, mandatory withdrawal is inappropriate"). *See also Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*, 107 B.R. 34, 38 (D.Del.1989) (noting that all district courts but one have embraced this position). Although swift pursuit of mandatory withdrawal pursuant to § 157(d) is advisable and, in some instances, necessary, *see Baldwin–United*, 57 B.R. at 754–55, unswerving insistence upon it might have the undesired effect of forcing parties to file § 157(d) motions based upon hasty predictions as to the applicability of non-title 11 federal law. Thus, Central States was enti-

2. Although the Trustee had earlier filed an objection to Central States' claim on August 21, 1989, that objection made no reference to § 1405(b) or any other provision of ERISA or the MPPAA. Accordingly, not until the Trustee

filed the § 1405(b) motion to modify Central States' claim on March 19, 1990 was there a basis for seeking withdrawal of the reference pursuant to § 157(d).

tled, if not required under Fed.R.Civ.P. 11, to take the opportunity to assess the Trustee's arguments and weigh the merits of seeking withdrawal of the reference under § 157(d) before taking action. Perhaps, as a practical matter, it need not have taken seven weeks to file the motion to withdraw the reference, but the Court cannot say that Central States was required to act more quickly under § 157(d). Certainly, the delay in this case is not as substantial as those of which courts have typically disapproved in other cases. *Compare Stavriotis*, 111 B.R. at 158 (motion untimely when not filed for eight months); *Baldwin–United*, 57 B.R. at 755 (one-year delay in filing motion unacceptable, particularly at stage of proceedings when strict adherence to time deadlines imperative); *In re Giorgio*, 50 B.R. 327, 329 (D.R.I.1985) (motion untimely after delay of approximately one year). Given that Central States essentially filed the motion to withdraw the reference contemporaneously with its response to the merits of the Trustee's § 1405(b) motion, the Court finds the § 157(d) motion to have been filed "as soon as reasonably possible." *Cf. IQ Telecommunications*, 70 B.R. at 746–47 (defendant's § 157(d) motion to withdraw proceedings upon adversary complaint timely even though filed 11 weeks after complaint, in view of fact that defendant filed the motion within the time provided for responding to the complaint, as enlarged by two unopposed motions for extensions of time, and before filing other pleadings).

In addition, the delay in this case does not conflict with the purpose of § 157(d)'s timeliness requirement. In an oft-quoted passage, the District Court in *Giorgio* discussed that purpose:

> The fair intendment of the statute in question is to insure that the request for withdrawal be filed as soon as practicable after it has become clear that "other laws" of the genre described in 28 U.S.C. § 157(d) are implicated, so as to protect the court and the parties in interest from useless costs and disarrangement of the calendar, and to prevent unnecessary delay and the use of stalling tactics.

50 B.R. at 329 (citations omitted). The Court agrees with Central States that the Trustee was in no material way prejudiced by the delay between the date his motion was filed and the date Central States acted to withdraw the reference. As noted, the Trustee was on notice that Central States might file a § 157(d) motion once it had reviewed the Trustee's arguments in favor of reducing the C–10 claim under § 1405(b). Moreover, as Central States observes, the Trustee has not demonstrated that he in any way relied detrimentally upon Central States' failure to act sooner than it did. *Cf. Burger King Corp. v. B–K of Kansas, Inc.*, 64 B.R. 728, 730–31 (D.Kansas 1986) (although parties seeking withdrawal based upon federal law implicated by their own counterclaims waited for 10 months after the counterclaims were filed before filing motion to withdraw, motion was nonetheless timely where there was no prejudice to other party); *Interconnect Telephone Services, Inc. v. Farren*, 59 B.R. 397, 402 (S.D.N.Y.1986) (in the absence of prejudice, defendants' motion to remove adversary proceeding was timely although filed more than one year after complaint and after defendants had already pursued unsuccessful motion to dismiss). *See also Texaco*, 84 B.R. at 920 (although parties seeking withdrawal of the reference could have done so before filing their response to the motion which they now sought to withdraw, the motion was not untimely where the proceedings had not progressed to the point where withdrawal would result in prejudice). The fact that the Trustee has already filed a memorandum of law in support of his motion does not represent wasted effort, for the issues will have to be briefed in one court or another. Moreover, in view of the fact that the Court will refer the Trustee's § 1405 motion back to Judge Katz for a report and recommendation, there will be no need for re-briefing or other duplicative efforts. To the extent that even this procedure poses some minimal inconvenience or added expense for the Trustee or for Lissner's creditors, these burdens are inherent in the mandatory withdrawal called for by § 157(d) and unavoidable. Finally, nothing in the record

evinces an attempt on the part of Central States to stall or obstruct the bankruptcy proceedings. *Compare In re Baldwin–United Corp.,* 43 B.R. 888, 894–95 (Bankr. S.D.Ohio 1984) (motion to withdraw proceeding untimely where filed 17 days after movants received notice of hearing and the court was convinced that the sole motivation for the motion was to secure the continuance which had previously been denied).

### B. *Necessity of Withdrawal*

██ Where, as in this case, the motion to withdraw the reference is timely, withdrawal is mandatory if resolution of the proceeding in question requires "substantial and material consideration" of federal law other than the Bankruptcy Code. *E.g., Eastern Airlines,* 1990 WL 5203; *In re Chateaugay Corp.,* 108 B.R. 27, 28 (S.D.N.Y.1989); *In re White Motor Corp.,* 42 B.R. 693, 703–04 (N.D.Ohio 1984). The Trustee has not, as noted earlier, challenged Central States' motion on any ground other than the threshold issue of timeliness. Thus, the Trustee appears to concede that his § 1405(b) motion requires substantial and material consideration of ERISA and MPPAA. In addition, the record itself suggests that resolution of the dispute over Central States' claim will require more than rote application of the provisions of ERISA or MPPAA. Accordingly, the Court concludes that withdrawal of the reference is required pursuant to § 157(d).

### C. *Referral to the Bankruptcy Court for Report and Recommendation*

██ Having determined that Central States' motion to withdraw the reference must be granted, it remains for the Court to ascertain the most expeditious manner in which to proceed. Both parties evidently view the prospect of bifurcating the Trustee's motion—proceeding with the § 1405(b) issues here and reserving the question of equitable subordination for the Bankruptcy Court—as unappealing. The Court shares the parties' concerns, and is reluctant to inject itself into proceedings which have parameters and a history with which the Court is not yet familiar beyond what it has been able to glean from the motion to withdraw. Accordingly, the Court deems it prudent to refer the Trustee's § 1405(b) motion to the Bankruptcy Court for a report and recommendation.

Although this approach appears to be somewhat novel, several other courts have adopted it in similar circumstances. *See, e.g., Chateaugay,* 108 B.R. at 29; *In re Pension Plan of Wheeling–Pittsburgh Steel Corp.,* 1988 WL 179896 (W.D.Pa. Jan. 7, 1988). Further precedent for such a referral may be found in part in the provisions of 28 U.S.C. § 157(c)(1), which permits bankruptcy courts to hear and prepare recommended findings upon matters other than the "core" proceedings which they are otherwise authorized to hear and determine pursuant to § 157(b). Section 157(c)(1) provides:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such [a] proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order of judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

Although the provisions of § 157(d) regarding withdrawal of the reference are silent as to whether the district court may refer a recalled matter back to the bankruptcy court for a report and recommendation in the manner provided for in § 157(c)(1), there is nothing in the terms of § 157(d) which suggests that this procedure is precluded. *See* 1 *Collier on Bankruptcy,* ¶ 3.01, at 3–65 (15th ed. 1987) ("The absence of any provision in the statute as enacted [allowing for referral of a recalled proceeding to the bankruptcy court for recommended findings] might lead to the conclusion that the case must be tried by the district judge. Just as likely is the conclusion that the trial might be before the bankruptcy judge and the dispositive order made by the district judge under section 157(c)(1) procedures."); *Chateaugay,* 108

B.R. at 29 n. 2. Moreover, the parties' right to have a district court resolve issues of federal non-bankruptcy law is in no way compromised by the exercise of this option. Because the bankruptcy court's role in this procedure is not to enter any final order of judgment, but solely to prepare recommended findings of fact and conclusions of law which are subject to *de novo* review by the district court, the parties retain the opportunity to be heard by and obtain a final judgment from an Article III judge. At the same time, the parties enjoy the benefit of having a judge who is most familiar with all aspects of the bankruptcy and who enjoys expertise in questions of bankruptcy law hear the withdrawn matter in the first instance and recommend an appropriate disposition, thereby minimizing the potential for disruption of the bankruptcy proceedings which otherwise attends recall of one segment of those proceedings pursuant to § 157(d). *See Chateaugay*, 108 B.R. at 29 (interests of judicial economy and expediency best served by the continued participation of the bankruptcy judge in the matters as to which the reference was withdrawn). Thus, if anything, referral of the withdrawn matter to the bankruptcy judge for a report and recommendation more fully protects the interests of the parties than does the rendering of a decision without the prior counsel of the bankruptcy court. For all of these reasons, the Court will adopt this approach here and refer the § 1405(b) issue to Judge Katz for a report and recommendation subject to *de novo* review by this Court.

In light of the fact that the Court has referred the § 1405(b) portion of the Trustee's motion to the Bankruptcy Court for recommended findings of fact and conclusions of law, the Court need not consider whether to withdraw the reference as to the portion of the Trustee's motion seeking equitable subordination of Central States' claim pursuant to 11 U.S.C. § 510(c). Central States did not move to withdraw the reference as to that aspect of the Trustee's motion, and only suggested that this Court hear the subordination issue in response to the Trustee's concern about bifurcated proceedings. Given that the § 1405(b) issue will be heard by the Bankruptcy Court in the first instance, thus permitting Judge Katz to address both the § 1405(b) issue and the equitable subordination issue at the same time, the prospect of cumbersome bifurcated proceedings which supplied the basis for the Trustee's concern is no longer present. In any event, even in cases of mandatory withdrawal, the district court is not required to remove an entire proceeding from the bankruptcy court simply because a party has successfully obtained withdrawal of a portion of that proceeding. *IQ Telecommunications*, 70 B.R. at 747 n. 4.

## IV. CONCLUSION

For the reasons set forth above, Central States' motion to withdraw the reference as to the Trustee's motion to reduce Central States' claim pursuant to 29 U.S.C. § 1405(b) is granted. The Court hereby refers the recalled motion to Bankruptcy Judge Erwin I. Katz for preparation of recommended findings of fact and conclusions of law, subject to *de novo* review by this Court.