**In re QUAKER CITY GEAR WORKS, INC., d/b/a Quaker Gear.**

Misc. No. 91–0286.
Bankruptcy No. 89–14165F.

United States District Court, E.D. Pennsylvania.

June 6, 1991.

Kenneth E. Aaron, Mesirov Gelman Jaffe Cramer & Jamieson, Philadelphia, Pa., for debtor.

Angela J. Arnett, Office of Gen. Counsel, Washington, D.C., for movant.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court are Pension Benefit Guaranty Corporation's ("PBGC") Motion for Withdrawal of Reference, Quaker City Gear Works, Inc. d/b/a Quaker Gear's ("Quaker") response and Cross–Motion for Re–Referral and PBGC's reply. For the following reasons, PBGC's Motion is DENIED and Quaker's Cross–Motion is GRANTED in part and DENIED in part.

## I. FACTS

Quaker filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on November 13, 1989. Since then Quaker has been operating as a debtor-in-possession retaining control over its assets. One of these assets is a certain defined benefit pension plan [1] (the "Plan") established in 1964 to provide retirement benefits to certain employees. Quaker's funding of the Plan is governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA") and corresponding provisions of the Internal Revenue Code, 26 U.S.C. § 401 *et seq.* ("IRC"). Benefits which individuals are entitled to under the Plan, i.e., vested benefits, are guaranteed in part by the PBGC.

On April 17, 1990, the PBGC [2] filed four estimated proofs of claim. One claim is for $699,300 in Unfunded Benefit Liabilities (29 U.S.C. §§ 1362(b) and 1368) and the three others seek a total of $244,428 for unpaid Minimum Funding Contributions (ERISA §§ 302, 4062(c), 29 U.S.C. § 1082, 1362(c); IRC § 412, 26 U.S.C. § 412). Three of the claims are designated priority claims under 11 U.S.C. § 507. All claims presuppose that the Plan will be terminated prior to confirmation of Quaker's plan of reorganization and that the PBGC will become the

---

1. A "defined benefit plan" is one that promises to pay employees, upon retirement, a fixed benefit under a formula that takes into account such factors as final salary and years of service with the employer. 29 U.S.C. § 1002(35) (Supp. 1991). This plan is distinguished from a "defined contribution plan" or "individual account plan" under which the employer contributes a portion of an employee's compensation to an account available to the employee upon retirement. 29 U.S.C. § 1002(34) (Supp.1991).

2. In *Pension Benefit Guar. Corp. v. LTV Corp. (In re Chateaugay Corp.),* 86 B.R. 33 (S.D.N.Y.1988), the PBGC, its purpose and function is described as follows:

> PBGC is a wholly-owned corporation of the United States government established under § 4002 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1302, to administer the pension plan termination insurance program created under Title IV of ERISA, § 29 U.S.C.

§ 1301–1461. *See generally In re Pension Plan For Employees of Broadway Maintenance Corp.,* 707 F.2d 647, 648–49 (2d Cir.1983) (describing PBGC in detail); *Pension Benefit Guaranty Corp. v. Heppenstall Co.,* 633 F.2d 293, 295–97 (3d Cir.1980) (same). When a pension plan covered by Title IV terminates without sufficient funds to pay benefits guaranteed under Title IV, the PBGC takes over the assets and liabilities of the plan and makes up any deficiency in plan assets from its own funds. The plan termination insurance program is funded by premiums PBGC collects from companies that maintain defined benefit plans, 29 U.S.C. §§ 1306, 1307, and liability amounts PBGC collects from employers that terminate underfunded pension plans. 29 U.S.C. § 1362. This program protects approximately 40 million workers from the complete loss of their promised benefits in terminated underfunded pension plans. 86 B.R. at 35. *See generally Pension Benefit Guar. Co. v. LTV Corp.,* ——— U.S. ———, 110 S.Ct. 2668, 2671, 110 L.Ed.2d 579 (1990).

trustee.[3]

In addition to $187,193.31 asserted on behalf of the Plan and included in Quaker's Schedules and Statement of Financial Affairs, three Plan participants have filed proofs of claim seeking a total of $77,039.99 in pension benefits.

On April 5, 1991, Quaker objected to, among others, PBGC's proofs of claim. Quaker avers that it has failed to make any minimum contribution to the plan as required by ERISA since July, 1987. (Objections ¶ 17 at 5). Although the Plan's assets are estimated at $8,786, the Unfunded Benefit Liabilities are approximately $611,001. (Objections ¶¶ 19, 20 at 5). Quaker further alleges that it is unable to fund or continue to maintain the Plan post-petition and believes that it cannot successfully reorganize if required to do so. (Objections ¶ 17 at 5).

## II. DISCUSSION

■ The PBGC contends that consideration of Quaker's Objections must be withdrawn pursuant 28 U.S.C. § 157(d). The section provides as follows:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section,[4] on its own motion or on timely motion of a party, for cause shown. The district court

shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (Supp.1991) (Emphasis added).[5] The purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of statutes outside the Bankruptcy Code. *Eastern Airlines, Inc. v. Air Line Pilots Assoc., Int'l (In re Ionosphere Clubs, Inc. and Eastern Airlines, Inc.),* No. 89–8250, slip op. at 14–15, 1990 WL 5203 (S.D.N.Y. Jan. 25, 1990) (Lexis, Genfed, Dist) (citing 1 L. King, *Collier on Bankruptcy* ¶ 3.01 at 3–66–67 (15th ed. 1989)).

■ Courts have recognized that the literal interpretation of the last sentence of § 157(d) could result in a broad escape hatch through which most bankruptcy matters could be removed to a district court. *In re White Motor Corp.,* 42 B.R. 693, 703–04 (N.D.Ohio 1984). Accordingly, that language has been routinely construed as requiring withdrawal only when "substantial and material consideration" of federal statutes other than the Bankruptcy Code are necessary for the resolution of a case or proceeding.[6] Because the "shall" provi-

---

**3.** Although the Plan has not been terminated to date, the PBGC estimates involuntary termination proceedings should be completed before Quaker's reorganization plan is confirmed.

**4.** Article I § 8 of the Constitution provides.Congress with the power to establish uniform bankruptcy laws. U.S. Const. art. I, § 8. Except as provided by Act of Congress, district courts are provided with original and exclusive jurisdiction of all cases under Title 11. 28 U.S.C. § 1334 (Supp.1991). Under 28 U.S.C. § 157(a), district courts are empowered to refer any and all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 to the bankruptcy judges. 28 U.S.C. § 157(a) (Supp.1991).

**5.** Section 157(d) was a part of a congressional response to the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which held unconstitutional the broad grant of jurisdiction given to bankruptcy

judges under the Bankruptcy Act of 1978 to hear and determine matters arising under or related to Title 11.

**6.** *Eastern Airlines, Inc. v. Air Line Pilots Assoc., Int'l (In re Ionosphere Clubs, Inc. and Eastern Airlines, Inc.),* No. 89–8250, slip op. at 14–15; *Pereira v. New York Hotel and Motel Trades Council (In re Chadborne Indus., Ltd.),* 100 B.R. 663, 667 (S.D.N.Y.1989); *Pension Benefit Guar. Corp. v. LTV Corp. (In re Chateaugay Corp.),* 86 B.R. 33, 36 (S.D.N.Y.1988); *Carr v. Michigan Real Estate Ins. Trust (In re Michigan Real Estate Ins. Trust),* No. 84–08320, slip op. at 33–35 (Bankr.E.D.Mich. Nov. 18, 1987) (Lexis, Genfed, Bank); *United States v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 63 B.R. 600, 602 (S.D.N.Y.1986); *Carter Day Indus, Inc. v. United States Environmental Protection Agency (In re Combustion Eng'g Equip. Assoc. Inc.),* 67 B.R. 709, 711 (S.D.N.Y.1986); *In re Baldwin–United Corp.,* 57 B.R. 751, 757 (S.D.Ohio 1985); *United States v. ILCO, Inc.,* 48 B.R. 1016, 1021 (N.D.Ala. 1985); *Pension Benefit Guar. Corp. v. Air Florida*

sion of § 157(d) is to be read narrowly, withdrawal of reference is denied where only routine application of established legal standards is called for or when it is not clear that application and interpretation of statutes other than the Bankruptcy Code will be necessary to resolve the case. *See Eastern Airlines, Inc. v. Air Line Pilots Assoc., Int'l (In re Ionosphere Clubs, Inc. and Eastern Airlines, Inc.)*, No. 89–8250, slip op. at 15.

■ In this case, the PBGC argues that resolution of Quaker's objections necessarily involves "substantial and material consideration" of ERISA and the IRC and, therefore, this Court is required to withdraw the reference. In response, Quaker contends that the issues raised by its Objections can be resolved without substantial and material consideration of ERISA and corresponding IRC provisions. Thus, while the parties agree that the substantial and material standard is applicable, they disagree on whether it is met on the facts presented.

In *White Motor Corp.*, 42 B.R. 693, 704 (N.D.Ohio 1984), PBGC, who was in charge of administering White Motor's termination insurance plan pursuant to ERISA, filed fifteen proofs of claim with the bankruptcy court. White Motor allegedly owed money to the plan to satisfy its minimum funding obligation under ERISA. Upon filing these claims, PBGC classified some of the claims as administrative expenses and others as high priority claims under §§ 503 and 507 of the Bankruptcy Code. Only a few were purported to be unsecured claims. The trustee of White Motor's estate objected to PBGC's classification of these claims. PBGC requested the district court to withdraw the dispute over classification of the claims contending that resolution of the issues raised by PBGC's claims required

consideration of ERISA, the IRC and the Bankruptcy Code. PBGC had asserted that issues pertaining to ERISA and the IRC would "probably" be raised in future proceedings before the bankruptcy court. After examining PBGC's alleged ERISA and tax related questions, the court found no basis to conclude that resolution of the PBGC's claims would involve a substantial and material consideration of nonbankruptcy statutes and that permitting the bankruptcy court to conduct core proceedings under § 157(b)(2)(B) was a sensible approach. 42 B.R. at 705–06. The court held that granting the motion to withdraw under these circumstances "would be inconsistent with the purposes underlying the existence of the Bankruptcy Court and would encourage forum shopping in a manner Congress disdained when it sought to avoid 'creating a multiplicity of forums for the adjudication of part of a bankruptcy case.' " *Id.* (citation omitted).

This Court does not agree with the PBGC that the issues raised by the Objections will require more than the routine application of ERISA law. Nor does the Court believe that the Objections necessitate substantial and material consideration of ERISA and the IRC. Accordingly, the motion to withdraw reference is denied.

Quaker's cross-motion, requesting that this matter be re-referred pursuant to 28 U.S.C. § 157(c) supports continued participation of the bankruptcy court. Section 157(c) provides:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under Title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order of judgment

---

Sys., Inc. (In re Air Florida Sys., Inc. Defined Benefit Pension Plan), Nos. 84–2958, 84–2959, slip op., 1985 WL 57049 (S.D.Fla. July 8, 1985) (Lexis, Genfed, Dist); *In re White Motor Corp.*, 42 B.R. at 703; *cf. Block v. Anthony Tammaro, Inc. (In re Tammaro, Inc.)*, 56 B.R. 999, 1007 (D.N.J.1986) (resolution of issue sought to be withdrawn must require substantial and material consideration of both the Bankruptcy Code and interstate commerce laws); *Maislin Indus.,*

*U.S., Inc. v. C.J. Van Houtan E. Zoon, Inc. (In re Maislin Indus., U.S., Inc.)*, 50 B.R. 943, 947–48 (Bankr.E.D.Mich.1985) (same). *But see Great Western Sugar Co. v. Interfirst Bank, Dallas, N.A.*, No. 3–85–1755–H, slip. op., 1985 WL 17671 (N.D.Tex. Nov. 7, 1985) (if action sought to be withdrawn involves non-Title 11 laws regulating organizations or activities affecting interstate commerce, withdrawal of reference is mandatory).

shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c) (Supp.1991). The PBGC argues that this Court should not re-refer the issues raised by Quaker's Objections because such a procedure would render the mandatory language in § 157(d) meaningless. For the reasons set forth in *In re Lissner Corp.*, 115 B.R. 604, 612–13 (N.D. Ill.1990), this Court disagrees.

*In re Lissner Corp.*, the court first observed that nothing in the language of § 157(d) precludes re-referral for the issuance of a report and recommendation in a manner provided for in § 157(c)(1). 115 B.R. at 612 (citing 1 *Collier on Bankruptcy* ¶ 3.01, at 3–65 (15th ed. 1987); *Pension Benefit Guar. Corp. v. LTV Corp. (In re Chateaugay Corp.)*, 108 B.R. 27, 29 n. 2 (S.D.N.Y.1989)). Next, the court held that the parties' right to have a district court resolve non-bankruptcy law issues is not compromised by this option because findings of fact and conclusions of law under § 157(c) are subject to *de novo* review. *Id.* at 613. Thus, there are no real Article III concerns. Finally, the court reasoned that by re-referral the parties have the benefit of a judge most familiar with all aspects of the bankruptcy and who enjoys expertise in bankruptcy law. *Id.* By hearing the matter withdrawn in the first instance, the potential for disruption of the bankruptcy proceedings is minimized.[7] *Id.* (citing *Pension Benefit Guar. Corp. v. LTV Corp. (In re Chateaugay Corp.)*, 108 B.R. at 29).

These reasons warrant the continued participation of the Bankruptcy Court here.

Additionally, Quaker has raised claims that plainly do not involve substantial consideration of non-bankruptcy law. Quaker has challenged its liability for administrative expense under the Bankruptcy Code; disputed the basis for assertion of priority claims; and contested the PBGC's standing to assert certain claims under Bankruptcy Rules. (Objections ¶¶ 26(c), (e); 29(a), (c), (d), (e); 32(a); and 35(a)). Finally, Quaker has objected to amounts claimed by the PBGC as being unsubstantiated. (Objections ¶¶ 26(h); 29(g); 32(f); and 35(d)). Resolution of these claims are clearly in the province of the bankruptcy court. Based upon the foregoing, the Court finds that this matter should be referred to the bankruptcy court. *See In re Lissner Corp.*, 115 B.R. at 612–13; *Pension Benefit Guar. Corp. v. LTV Corp. (In re Chateaugay Corp.)*, 108 B.R. at 29; *Wheeling–Pittsburgh Steel Corp. v. Pension Benefit Guar. Corp., (In re Pension Plan of Wheeling–Pittsburgh Steel Corp. Mon Valley Plants)*, Nos. 85–2030, 85–2406, 87–355, slip op., 1988 WL 179896 (W.D.Pa. Jan. 7, 1988).[8]

---

**7.** Quaker has maintained that withdrawing the reference would confuse or delay the solicitation, voting and approval of the reorganization plan. It has also been argued that withdrawal of the matters raised in Counts I–IV (the PBGC objections) would preclude the comprehensive relief requested in the Objections.

**8.** Under 28 U.S.C. § 157(b)(1), bankruptcy judges are empowered to enter appropriate orders and judgments in "core proceedings" subject to appellate review by the district court pursuant to 28 U.S.C. § 158. 28 U.S.C. § 157(b)(1) (Supp.1991). A non-exclusive list of "core proceedings" is detailed in § 157(b)(2).

Under § 157(c)(1) a bankruptcy judge may hear a proceeding which is not a core proceeding but that is otherwise related to a case under Title 11. 28 U.S.C. § 157(c)(1). In such a proceeding the bankruptcy court is obliged to submit proposed findings of fact and conclusions of law subject to *de novo* review by the district court. Quaker seeks an order re-referring matters withdrawn for disposition by the bankruptcy court in a manner consistent with § 157(c)(1). This Court leaves the determination of whether the Objections require core or non-core proceedings to the bankruptcy court. *See Cooper v. Howitt (In re 1733 Ridge Road East, Inc.)*, 125 B.R. 722 (W.D.N.Y.1991).