In re SMITH CORONA CORPORATION, SCM Office Supplies, Inc., SCC LI Corp., and Hulse Manufacturing Company, Debtors.

PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,

v.

SMITH CORONA CORPORATION, SCM Office Supplies, Inc., SCC LI Corp. and Hulse Manufacturing Company, Defendants.

Civil Action No. 96–481–JJF.

United States District Court, D. Delaware.

Oct. 18, 1996.

Norman L. Pernick, Mark Minuti, of Saul Ewing Remick & Saul, Wilmington, DE, Jeffrey B. Cohen, Pension Benefit Guaranty Corp., Washington, D.C., for Plaintiff.

Laura Davis Jones, David W. O'Connor, Young Conaway Stargatt & Taylor, Wilmington, DE (Richard L. Epling, Frederick A. Brodie, Winthrop, Stimson, Putnam & Roberts, New York City, special counsel), for Defendants.

Neil B. Glassman, Jeffrey M. Schlerf, Bayard, Handelman & Murdoch, Wilmington, DE, Francis J. Menton, Jr., Willkie Farr & Gallagher, New York City, for the Committee of Unsecured Creditors of Smith Corona Corp.

### MEMORANDUM OPINION

FARNAN, District Judge.

Pending before the Court is the Motion for Withdrawal of the Reference Under 28 U.S.C. § 157(d) filed by The Pension Benefit Guaranty Corporation ("PBGC"). The Motion was filed in response to Smith Corona Corporation's ("Smith Corona") Motion for Approval of Distress Termination of Pension Plans ("Distress Termination Motion"), which was filed in the Bankruptcy Court for the District of Delaware. For the reasons set forth below, the Court concludes that neither mandatory nor discretionary withdrawal is warranted in this case. Therefore, PBGC's Motion for Withdrawal will be denied.

## STATEMENT OF FACTS

On July 5, 1995, Smith Corona filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Three subsidiaries of Smith Corona, SCM Office Supplies, Inc., SCC LI Corporation, and Hulse Manufacturing Company, also filed voluntary petitions under Chapter 11. On August 18, 1995, the Bankruptcy Court approved the joint administration of these petitions.

In conjunction with their reorganization efforts and pursuant to the provisions outlined in Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA") and its accompanying regulations, Smith Corona

commenced administrative and judicial proceedings for the distress termination of its two non-contributory defined benefit plans, The Smith Corona Corporation Salaried Employees' Retirement Plan, and The Smith Corona Corporation Hourly Employees' Retirement Plan and SCM Office Supplies, Inc. Salaried Employees' and Hourly Employees' Retirement Plan (collectively, the "Defined Benefit Plans"). Specifically, on August 7, 1996, Smith Corona filed a Distress Termination Notice of Intent to Terminate, and on August 22, 1996, Smith Corona filed its Distress Termination Motion with the Bankruptcy Court.

On September 6, 1996, PBGC filed the instant Motion for Withdrawal of the Reference pursuant to 28 U.S.C. § 157(d) and a Motion to Stay the bankruptcy proceedings, pending resolution of its Motion for Withdrawal. On September 12, 1996, the Bankruptcy Court granted PBGC's Motion to Stay. On October 17, 1996, this Court heard oral arguments on the Motion for Withdrawal.

## DISCUSSION

Under 28 U.S.C. § 1334(b), district courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Pursuant to 28 U.S.C. § 157(a), each district court may refer cases under title 11 to bankruptcy judges for disposition. However, Section 157(d) provides two mechanisms, one mandatory and one discretionary, by which the referred proceeding can be withdrawn from the bankruptcy court and returned to the district court.

In this case, PBGC argues that under both mechanisms withdrawal is warranted. First, PBGC argues that withdrawal is mandatory because Smith Corona's Distress Termination Motion raises substantial and material consideration of Title IV of ERISA, *as amended*, 29 U.S.C. §§ 1301–1461 (1994). In the alternative, PBGC asks the Court to exercise its discretion and withdraw the Distress Termination Motion.

### A. Mandatory Withdrawal

In providing for mandatory withdrawal, Section 157(d) states:

The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Courts have recognized that a literal interpretation of this provision could result in an "escape hatch" through which most bankruptcy matters could routinely be removed to the district court. *In re Quaker City Gear Works, Inc.,* 128 B.R. 711, 713 (E.D.Pa.1991) (citing *In re White Motor Corp,* 42 B.R. 693, 703–04 (N.D.Ohio 1984)). Accordingly, in determining whether withdrawal is required under this section, a two prong test is utilized with the intention of narrowing the scope of Section 157(d). First, a need to consider "other laws," outside of the Bankruptcy Code, for the resolution of the proceeding must be established. *Columbia Gas Transmission Corporation v. Columbia Gas System, Inc.,* 1993 U.S. Dist. Lexis 1280, *10; *In re Continental Airlines,* 138 B.R. 442, 444 (D.Del.1992). Second, consideration of these "other laws" must be substantial and material. *Columbia Gas,* at *10; *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities,* 107 B.R. 34, 38 (D.Del.1989). Thus, withdrawal will not be granted when only a straightforward application of a federal law is required for resolution of the pending issue. *Columbia Gas,* at *10. Application of this standard furthers the underlying policy of Section 157(d), which is to withdraw "matters requiring the application of non-bankruptcy law from the relatively less experienced bankruptcy court to the more experienced district court." *In re St. Mary Hospital,* 115 B.R. 495, 497 (E.D.Pa.1990).

In applying the two prong standard for mandatory withdrawal, the party seeking withdrawal bears the burden of demonstrating that the two requirements are satisfied. *In re Continental,* 138 B.R. at 445. Applied here, this standard requires PBGC to show that Smith Corona's Distress Termination Motion requires substantial and material con-

sideration of ERISA. In this regard, PBGC argues that Smith Corona's Distress Termination Motion raises four novel issues that require substantial and material consideration of ERISA: (1) whether the Bankruptcy Court, rather than PBGC, can order termination of the Smith Corona Defined Benefit Plans under ERISA, 29 U.S.C. § 1341; (2) determination of the appropriate standard for distress termination under Section 1341(c)(2)(B)(ii); (3) classification of PBGC's claims as general unsecured claims or priori-ty claims; and (4) valuation of PBGC's claims.

In response to the first issue cited by PBGC, Smith Corona contends that it is not asking the Bankruptcy Court to usurp PBGC's role in the termination process set out in Section 1341. Rather, Smith Corona claims it is merely asking the Bankruptcy Court to determine whether Smith Corona meets the "reorganization test" for distress termination under Section 1341(c)(2)(B)(ii). In support of this argument, Smith Corona points out that ERISA expressly provides that the "reorganization test" is met if there has been a "request for the approval of the *bankruptcy court* (or other appropriate court in a case under such similar law of a State or political subdivision) of the plan termination" and "the *bankruptcy court* (or such other appropriate court) determines that, unless the plan is terminated, such person will be unable to pay all its debts pursuant to a plan of reorganization and will be unable to continue in business outside the chapter 11 reorganization process and approves termination." 29 U.S.C. § 1341(c)(2)(B)(ii)(III) and (IV) (emphasis added). Considering the express ERISA language, the Court concludes that by requesting that the Bankruptcy Court perform its mandated role, Smith Corona's Distress Termination Motion involves a straightforward application of the relevant section and does not implicate substantial and material consideration of ERISA, and therefore, withdrawal is not mandated on this issue.

As to the second issue raised by PBGC, Smith Corona acknowledges that the correct standard to be applied to distress termination pursuant to the "reorganization test" is that "unless the plan is terminated, such person *will* be unable to pay all its debts" and "*will* be unable to continue in business." 29 U.S.C. § 1341(c)(2)(B)(ii)(IV) (emphasis added). Although Smith Corona's Distress Termination Motion substitutes the word "*could*" for the word "will," Smith Corona maintains that this was an editorial choice and not an attempt to argue that a different legal standard applies. The Court accepts Smith Corona's explanation and thus concludes that Smith Corona's Distress Termination Motion does not implicate substantial and material consideration of ERISA with regard to the applicable "reorganization test" standard.

With regard to the third and fourth issues raised by PBGC, classification and valuation of PBGC's claims, the Court is persuaded that an analysis of the interplay between ERISA and the Bankruptcy Code is involved, however, the Court is not convinced that the classification and valuation issues raise the substantial and material consideration of non-bankruptcy law that is required for mandatory withdrawal. *See In re Quaker City* 128 B.R. at 714–15 (holding that classification of PBGC's claims do not require more than routine application of ERISA). Although core and non-core determinations are properly left to the Bankruptcy Court in the first instance, the priority and valuation claims presented here can be analogized to what bankruptcy judges would typically find to be core proceedings, because they strike at the heart of the estate administration.[1] *See In re Delaware & Hudson Ry.*, 122 B.R. 887 (D.Del.1991) (holding that bankruptcy judge must determine core/non-core characterization in first instance). As such, the Court concludes that these matters are properly within the Bankruptcy Court's expertise, subject to appellate review by this Court. 28 U.S.C. § 157(b)(1).

---

1. Procedurally, this Motion for Withdrawal does not stem from a core/non-core determination by the Bankruptcy Court. Rather, this Motion is based on Smith Corona's Distress Termination Motion. The Court is not rendering a decision on the core/non-core issue; that determination is left to the Bankruptcy Court. However, the Court utilizes this analogy to further stress the propriety of declining the withdrawal of this case from the Bankruptcy Court.

In sum, the four issues or grounds argued by PBGC in support of its Motion for Withdrawal do not meet the requirements of the two prong standard, and therefore, PBGC's application for withdrawal must be denied.

### B. *Discretionary Withdrawal*

As an alternative argument, PBGC argues that the Court should withdraw this proceeding under the discretionary mechanism provided in 28 U.S.C. § 157(d). Section 157(d) states: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." This Court has repeatedly acknowledged that the requirement that cause be shown "creates a 'presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court, unless rebutted by a contravening policy.'" *Columbia Gas,* at *14; *In re Delaware & Hudson Ry.,* 122 B.R. at 893; *Hatzel & Beuhler, Inc. v. Central Hudson Gas & Elec.,* 106 B.R. 367, 371 (D.Del.1989).

Although "cause" is not statutorily defined, the Court of Appeals for the Third Circuit has set forth five factors that a district court should consider in determining whether "cause" exists for discretionary withdrawal. These factors include: (1) promoting uniformity of bankruptcy administration; (2) reducing forum shopping and confusion; (3) fostering economical use of debtor/creditor resources; (4) expediting the bankruptcy process; and (5) timing of the request for withdrawal. *In re Pruitt,* 910 F.2d 1160, 1168 (3d Cir.1990) (adopting *Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992, 999 (5th Cir.1985)).

In this case, the Court concludes that discretionary withdrawal would not promote these goals. The Bankruptcy Court has been working at a quick pace with all matters related to this bankruptcy and has attempted to expedite reorganization. The Court is concerned that a withdrawal of this matter to this Court at this time may disrupt the progress of the case by slowing reorganization efforts. Moreover, it is this Court's view that the issues of priority and valuation of claims presented by PBGC are more pru-

dently left to the experience of the Bankruptcy Court. For these reasons, the Court declines to exercise its discretion and grant withdrawal in this case.

### CONCLUSION

For the reasons discussed, the Court concludes that neither mandatory nor discretionary withdrawal is warranted in this case. Accordingly, PBGC's Motion for Withdrawal of the Reference Under 28 U.S.C. § 157(d) will be denied.

An appropriate Order will be entered.